427 So.2d 153 (1982)
KEY HAVEN ASSOCIATED ENTERPRISES, INC., Petitioner,
v.
BOARD OF TRUSTEES OF the INTERNAL IMPROVEMENT TRUST FUND, et al., Respondents.
No. 61027.
Supreme Court of Florida.
December 16, 1982.
Rehearing Denied March 9, 1983.
*154 J. Riley Davis and Robert J. Paterno of Taylor, Brion, Buker & Greene, Tallahassee, Mallory H. Horton of Horton, Perse & Ginsberg, Miami, and David Paul Horan of Law Office of David Paul Horan, Key West, for petitioner.
Terry Cole, Asst. Secretary and Segundo J. Fernandez, Deputy Gen. Counsel, Florida Dept. of Environmental Regulation, Tallahassee, for respondents.
OVERTON, Justice.
This is a petition to review the decision of the First District Court of Appeal in Key Haven Associated Enterprises v. Board of Trustees, 400 So.2d 66 (Fla. 1st DCA 1981). The district court held that an action for inverse condemnation, based on the denial of a dredge-and-fill permit by the Department of Environmental Regulation (DER), may not be taken in a circuit court until all remedies provided in chapter 120, Florida Statutes (1975), including an appeal to the *155 appropriate district court of appeal, have been exhausted. The district court, in this holding, expressly construed article X, section 6, Florida Constitution. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We approve in part and disapprove in part the decision of the district court and hold that, under the facts of this case, Key Haven was required to exhaust all executive branch administrative remedies before instituting the circuit court action, but, under the specific circumstances in this case, would not have been required to seek direct review of the final executive branch action in the district court of appeal. Resolution of the issue in this case requires us to determine the appropriate forum in which to raise constitutional questions arising from administrative action or implementation of statutory provisions.
The present dispute evolves from the conflict between the implementation of legislation which has as its purpose the protection of our natural resources and the right to the beneficial use of private property. The facts as summarized are undisputed. Between 1964 and 1968, petitioner Key Haven, a land developer, purchased 185 acres of submerged shallow flatlands located in the Florida Keys from the governor and cabinet sitting as the Trustees of the Internal Improvement Fund (IIF), paying three hundred dollars per acre for the land. In 1972, four years after the last land purchase, Key Haven applied to the state, pursuant to the regulatory statutes, for a permit to dredge 679,000 cubic yards of limestone from a portion of its submerged lands and to use this material to fill the remaining land to create canal-front lots. In 1976, DER notified Key Haven of its intention to deny the application for the dredge-and-fill permit.
Key Haven sought and received a formal hearing under section 120.57(1), Florida Statutes (1975), in which it argued that the permit should be granted because the dredge-and-fill proposal conformed to the standards for preserving natural resources and water quality set out in chapters 253 and 403, Florida Statutes (1975). The Department of Administrative Hearings officer found, however, that Key Haven's proposed project would obliterate all aquatic life in the area so that the project did not meet the requirements of chapters 253 and 403. The hearing officer also found that, because the IIF trustees had not promised a permit to or misled Key Haven in any way, the state was not estopped from denying the permit even though the IIF trustees sold the submerged land to Key Haven with implied knowledge that the purchaser desired to improve the submerged land for beneficial use. DER issued a final order denying the dredge-and-fill permit.
At this stage of the proceedings, Key Haven decided not to seek review of DER's order by appealing to the IIF trustees pursuant to section 253.76, Florida Statutes (1975), and by thereafter appealing to the district court of appeal pursuant to section 120.68, Florida Statutes (1975). Instead, Key Haven filed suit in the circuit court, alleging that the denial of the dredge-and-fill permit, although proper under the requirements of chapters 253 and 403, constituted a taking of its property by inverse condemnation because the action totally denied it the use of its property for any beneficial purpose and because the IIF trustees sold the submerged lands to Key Haven's predecessor knowing of the intent to dredge and fill the land. Key Haven asserted that it was entitled to just compensation under article X, section 6, Florida Constitution.
DER filed a motion to dismiss, alleging that the circuit court lacked subject matter jurisdiction in the case. The trial court granted the motion to dismiss based on Coulter v. Davin, 373 So.2d 423 (Fla. 2d DCA 1979), and Kasser v. Dade County, 344 So.2d 928 (Fla. 3d DCA 1977). The trial court found that Key Haven was essentially alleging that the "agency action constituted an unconstitutional taking of land," and determined that Key Haven was in the same posture as the petitioners in Coulter in that "both actions were attempts to collaterally attack the particular agency's denial of a permit." The trial judge relied on the holding in Coulter that "those constitutional issues which could have been raised *156 by the party in a petition to the district court of appeal for review of the agency action are foreclosed and may not be subsequently asserted in a suit for relief brought in circuit court," 373 So.2d at 425, in dismissing the suit for inverse condemnation, finding that "the plaintiff has not exhausted his administrative remedies." The trial judge also found that "Key Haven's assertions of satisfaction with the denial of the permit are inconsistent with its position that that same action constitutes an unconstitutional taking of its property," citing Kasser v. Dade County.
Key Haven appealed to the First District Court of Appeal, which affirmed the trial court's order. The district court thoroughly reviewed the case law and judicial policy relating to the requirement that litigants exhaust available administrative remedies and observed that "all review processes afforded by the executive branch must ordinarily be exhausted before the judicial branch will consider intervention." Key Haven, 400 So.2d at 69. The district court reiterated the accepted rule that, once the executive branch remedies have been exhausted, "constitutional issues growing out of agency action" must be resolved by direct review of the agency action in district court, id. at 70, since "a party ordinarily will not be indulged a collateral attack on administrative action in circuit court." Id. at 68. The district court agreed with the trial court's reliance on Coulter and Kasser and with the trial court's determination that Key Haven was attempting to collaterally attack the agency action in circuit court.
Perceiving the inverse condemnation claim as, in reality, an attempt by Key Haven to litigate constitutional issues going to the merits of the agency action, the district court could see no reason for allowing Key Haven to avoid "the principles of primary administrative jurisdiction and exhaustion of administrative remedies," which would include an appeal of DER's action to the IIF trustees and judicial review of the agency action in the district court. Id. at 71. The district court found that the appropriate judicial forum in which to raise the unconstitutional taking of property claim was in the district court on direct review of the decision of the trustees, holding that "Chapter 120 remedies plainly were adequate, and the circuit court correctly declined `to employ an extraordinary remedy to assist a litigant who has foregone an ordinary one which would have served adequately.'" Id. at 74 (quoting State ex rel. Department of General Services v. Willis, 344 So.2d 580, 592-93 (Fla. 1st DCA 1977)). One of the reasons given by the district court for this conclusion was that a district court could direct the executive agency to make modifications in agency action that would make the action constitutional or could direct the agency to institute condemnation proceedings. Id. at 69, 72.
We agree in part and disagree in part. We agree that, before Key Haven could use the permit denial as a basis for an inverse condemnation claim, it was required to pursue a section 253.76 appeal to the IIF trustees. We disagree with the district court's conclusion that, upon an adverse ruling by the trustees, Key Haven's only option would be to exhaust the administrative process delineated in chapter 120 by seeking judicial review of the agency action in a district court of appeal under the provisions of section 120.68.
We hold that, once an applicant has appealed the denial of a permit through all review procedures available in the executive branch, the applicant may choose either to contest the validity of the agency action by petitioning for review in a district court, or, by accepting the agency action as completely correct, to seek a circuit court determination of whether that correct agency action constituted a total taking of a person's property without just compensation. We disagree, however, with Key Haven's contention that a party aggrieved by agency action is not in any way restricted in choosing a judicial forum in which to raise constitutional claims.

Constitutional Challenges to Administrative Action
We have expressly recognized that circuit courts have the power, in all circumstances, *157 to consider constitutional issues. Gulf Pines Memorial Park, Inc., v. Oakland Memorial Park, Inc., 361 So.2d 695 (Fla. 1978). However, we stated in Gulf Pines that, as a matter of judicial policy, "the circuit court should refrain from entertaining declaratory suits except in the most extraordinary cases, where the party seeking to bypass usual administrative channels can demonstrate that no adequate remedy remains available under Chapter 120." Id. at 699. Clearly, the determination of whether a particular controversy may be taken out of the administrative process and into a circuit court is a question of judicial policy and not a matter of judicial jurisdiction. Judicial intervention in the decision-making function of the executive branch must be restrained in order to support the integrity of the administrative process and to allow the executive branch to carry out its responsibilities as a co-equal branch of government.
Three types of constitutional challenges may be raised in the context of the administrative decision-making process of an executive agency. An affected party may seek to challenge: (1) the facial constitutionality of a statute authorizing an agency action; (2) the facial constitutionality of an agency rule adopted to implement a constitutional provision or a statute, or (3) the unconstitutionality of the agency's action in implementing a constitutional statute or rule.

Facial Unconstitutionality of a Statute
If the statute being implemented by an agency is claimed to be facially unconstitutional, the circuit court may, in appropriate circumstances, entertain a declaratory action on the statute's validity. Gulf Pines involved a constitutional claim that the statute being implemented by the agency constituted an invalid delegation of legislative authority. Under the circumstances presented in Gulf Pines, we held that when the administrative proceedings can have no effect on the constitutional issue to be presented to the circuit court, "it is pointless to require applicants to endure the time and expense of full administrative proceedings." 361 So.2d at 699. See also Smith v. Willis, 415 So.2d 1331 (Fla. 1st DCA 1982). A requirement that administrative proceedings be exhausted for the type of challenge presented in Gulf Pines would be needlessly time-consuming and expensive. Since the facial constitutionality of a statute may not be decided in an administrative proceeding, Department of Revenue v. Young American Builders, 330 So.2d 864 (Fla. 1st DCA 1976), this type of constitutional issue could not, absent recourse to the circuit courts, be addressed until the administrative process is concluded and the claim is before a district court of appeal on direct review of the agency action.
We agree with the district court's position in the instant case that the aggrieved party could complete the administrative process and then challenge the statute's facial constitutionality in the district court on the direct review to which the party is entitled under section 120.68. We recognize that in Coulter v. Davin, 373 So.2d 423 (Fla. 2d DCA 1979), the court expressed a contrary view, holding that a district court does not have jurisdiction under section 120.68 to overturn agency action because of the facial unconstitutionality of an underlying statute. We reject that view because we believe we should approve a process that would allow all issues to be decided in the least expensive and time-consuming manner. We note, however, that once a party chooses one or the other alternative, he is foreclosed from proceeding with the alternative remedy.

Facial Unconstitutionality of an Agency Rule
When the facial unconstitutionality of an agency rule is the focus of an aggrieved party's constitutional claim, the administrative proceedings must be exhausted and the claim presented to the district court. A circuit court should not, as a matter of policy, entertain an action alleging the facial unconstitutionality of an agency rule because an adequate remedy remains available in the administrative *158 process. For example, in Rice v. Department of Health and Rehabilitative Services, 386 So.2d 844 (Fla. 1st DCA 1980), an aggrieved party challenged, on equal protection, due process, and first amendment grounds, the agency rule implementing the statute requiring registration of the birth and name of a child. After the district court remanded the case, the agency reevaluated the rule and determined that the statute did not require the agency to so narrowly restrict the surnames which could be entered on a birth certificate. Rice v. Department of Health and Rehabilitative Services, 3 FALR 314-A (1981). The agency was thus able to modify its rule, in the context of the administrative process, to accord with constitutional requirements.
If the agency fails to act to correct the rule, then the district court may review both the constitutionality of the rule and the agency action "comprehensively, on all appropriate issues, in a single judicial forum." Key Haven, 400 So.2d at 69. The basis of this judicial policy is the avoidance of a multiplicity of actions on issues involving administrative decision-making. The executive branch has the duty, and must be given the opportunity, to correct its own errors in drafting a facially unconstitutional rule. As a matter of policy, therefore, a circuit court should refrain from interfering in the administrative process since a remedy for a facially unconstitutional rule can be fashioned within that process.

Unconstitutional Application of a Statute or Agency Rule
The final category of constitutional challenge is the claim that an agency has applied a facially constitutional statute or rule in such a way that the aggrieved party's constitutional rights have been violated. This type of challenge would involve the assertion that an agency's implementing action was improper because, for example, the agency denied the party the rights to due process or equal protection. A suit in the circuit court requesting that court to declare an agency's action improper because of such a constitutional deficiency in the administrative process should not be allowed. As well articulated by Judge Smith in the instant case, administrative remedies must be exhausted to assure that the responsible agency "has had a full opportunity to reach a sensitive, mature, and considered decision upon a complete record appropriate to the issue." Key Haven, 400 So.2d at 69. We also agree with the instant district court decision that, sitting in their review capacity, the district courts provide a proper forum to resolve this type of constitutional challenge because those courts have the power to declare the agency action improper and to require any modifications in the administrative decision-making process necessary to render the final agency order constitutional. A party may, however, seek circuit court relief for injuries arising from an agency decision which the party accepts as intrinsically correct, as illustrated in this case.

Key Haven's Claim
In the instant case, Key Haven did not allege in the circuit court that any statute relied upon by DER in denying its dredge-and-fill permit was facially unconstitutional, nor did Key Haven assert that the agency action was improper because of a constitutional violation inherent in the agency's decision-making process. Rather, Key Haven asserted in its circuit court complaint that, although DER's action in denying the permit was proper and taken in accordance with the requirements of a constitutionally valid statute, the denial nevertheless resulted in an unconstitutional taking of Key Haven's private property without just compensation. We note that the statutes in this instance, chapters 253 and 403, allow such a taking to occur.
We hold that Key Haven could not pursue the inverse condemnation action in circuit court without first having taken an appeal of the permit denial to the IIF trustees, consisting of the governor and cabinet, as provided in section 253.76. The district court correctly observed that the trustees could have offered Key Haven several possible remedies as a result of the appeal. The trustees could have found the permit *159 denial improper or found a basis for allowing less extensive development of the land. We do not agree, however, with the district court's holding that, had Key Haven appealed to the trustees without success, the claim that the agency action amounted to a taking of its property could be presented only to the district court on direct review of agency action.
A petition to the district court for review of agency action is necessarily taken when an aggrieved party wishes to assert that the agency action was improper. The district court considered Key Haven's assertion that its property had been taken without just compensation to be, in essence, a collateral attack on the propriety of the permit denial. The district court stated: "The constitutional question is not independent of the agency's action on the merits, but is inseparable from it, and the constitutional question is necessarily phrased, ingeniously or ingenuously, as a variation of the affected party's original position on the nonconstitutional question." Key Haven, 400 So.2d at 71. The district court observed that the claim that the property was taken was a "constitutionally rephrased question that Key Haven might have presented as a permit issue through Chapter 120 processes." Id. We must disagree. In the particular circumstances of this case, where the agency is implementing a statute which, by its terms, properly allows a total taking of private property, direct review in the district court of the agency action may be eliminated and proceedings properly commenced in circuit court, if the aggrieved party is willing to accept all actions by the executive branch as correct both as to the constitutionality of the statute implemented and as to the propriety of the agency proceedings. We disagree with the holdings in Albrecht v. State, 407 So.2d 210 (Fla. 2d DCA 1981), and in Coulter insofar as they conflict with our conclusions in this case.
We hold that Key Haven could have filed suit for inverse condemnation in the circuit court, after exhausting all executive branch appeals, because we find that Key Haven's claim in the circuit court is not a veiled attempt to collaterally attack the propriety of agency action. When an aggrieved party has no grounds for contesting the propriety of agency action, a remedy is available, but not mandatory, in the circuit court for inverse condemnation. We agree with the district court, and wish to emphasize, that if a party in Key Haven's position has appealed to the trustees and received an adverse ruling, the only way it can challenge the propriety of the permit denial, based on asserted error in the administrative decision-making process or on asserted constitutional infirmities in the administrative action, is on direct review of the agency action in the district court. The claim of the taking of property can be raised in this direct review proceeding, and, if an adequate record is available, the district court could require the state to institute condemnation proceedings. Estuary Properties, Inc. v. Askew, 381 So.2d 1126 (Fla. 1st DCA 1979), rev'd on other grounds sub nom. Graham v. Estuary Properties, Inc., 399 So.2d 1374 (Fla.) cert. denied, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981).
We reject the assertion that this permit denial cannot be both proper and confiscatory. This case presents a much different situation than that presented in Kasser v. Dade County, 344 So.2d 928 (Fla. 3d DCA 1977), where the court refused to allow the contradictory claim that a denial of rezoning was both reasonable and confiscatory. A zoning ordinance is, by definition, invalid if it is confiscatory. Dade County v. Moore, 266 So.2d 389 (Fla. 3d DCA 1972). We agree with the court in Kasser, which correctly held that an assertion that a denial of rezoning is confiscatory constitutes a direct attack on the validity of a zoning ordinance. This is not the case when a statute authorizes a permit denial which is confiscatory. As we stated in Graham v. Estuary Properties, "it may be ... that a regulation complies with standards required for the police power but still results in a taking." 399 So.2d at 1381.
We note that one of the factors that must be considered by the circuit court in determining *160 if a taking of property has actually occurred is whether "the regulation precludes all economically reasonable use of the property." Id. at 1380. We point this out because the district court found that "Key Haven seeks in consequence of DER's lawful action ... full compensation for the lost `Manhattan' Key Haven might have raised from the ocean floor by dredge and fill." Key Haven, 400 So.2d at 69 (footnote omitted). We emphasize that a taking will not be established simply because DER denies a permit for the particular type of use that a property owner considers to be the most desirable or profitable use of the property. Estuary Properties, 399 So.2d at 1382-83.
We conclude by holding that an aggrieved party must complete the administrative process through the executive branch, which in this instance requires an appeal to the IIF trustees. Having completed review in the executive branch, if an aggrieved party does not wish to further contest the validity of the permit denial by seeking district court review, the party may accept the agency action under the statute being implemented in this case and file suit in circuit court on the basis that denial was proper but resulted in an unconstitutional taking of the party's property. We find that this procedure exists independent of the specific statutory authority now found in section 253.763(2), Florida Statutes (1979), which became effective on May 29, 1978, after Key Haven filed suit in the circuit court in this case.[*]
We emphasize that, by electing the circuit court as the judicial forum, a party foregoes any opportunity to challenge the permit denial as improper and may not challenge the agency action as arbitrary or capricious or as failing to comply with the intent and purposes of the statute. See Estuary Properties, 399 So.2d at 1380-81. Further, if an aggrieved party intends to assert that the agency should have, or could have, allowed at least a modified use of the property, this issue may not be presented to the circuit court in an inverse condemnation proceeding; this assertion presents an issue that must be addressed in the administrative proceeding and before the district court.
We approve the district court's holding in the instant case that the trial court properly dismissed Key Haven's suit in inverse condemnation because Key Haven had failed to exhaust its administrative remedies by appealing DER's order denying the dredge-and-fill permit to the IIF trustees, pursuant to section 253.76. We disapprove that part of the district court's holding that would require Key Haven to seek direct review of the trustees' action in the district court, as the only available avenue to obtain judicial consideration of its claim that its property was taken. Our holding does not mean that Key Haven cannot submit another proposed plan for the use of the subject property and proceed according to the procedures delineated in this opinion; the proceedings on this present application are, however, concluded.
For the reasons expressed, the opinion of the district court in the instant case is approved in part and disapproved in part.
It is so ordered.
ADKINS, BOYD and EHRLICH, JJ., concur.
ALDERMAN, C.J., dissents with an opinion, with which McDONALD, J., concurs.
McDONALD, J., dissents with an opinion.
*161 ALDERMAN, Chief Justice, dissenting.
I dissent on the basis that this Court does not have jurisdiction pursuant to article V, section 3(b), Florida Constitution, to review the district court's decision. The district court did not expressly construe article X, section 6, Florida Constitution, and its decision does not expressly and directly conflict with a decision of another district court or this Court. I would therefore deny review.
McDONALD, J., concurs.
McDONALD, Justice, dissenting.
I dissent because I can find no jurisdictional basis to entertain this petition for review. Contrary to the statement appearing in the opinion, the district court did not construe a provision of the state constitution. There is no conflict of decision; the cause was not certified by the district court as being one of great public importance; it does not affect a class of constitutional officers or fit any other jurisdictional basis. This is a case of great public importance and a case this Court should decide on the merits if we had jurisdiction to do so. I perceive a flaw in this Court's jurisdictional authorization, but I must be true to the constitution and follow it. Should I be able to reach the merits I would concur, but since I cannot, I dissent.
NOTES
[*] Section 253.763(2) provides:

Any person substantially affected by a final action of any agency with respect to a permit may seek review within 90 days of the rendering of such decision and request monetary damages and other relief in the circuit court in the judicial circuit in which the affected property is located; however, circuit court review shall be confined solely to determining whether final agency action is an unreasonable exercise of the state's police power constituting a taking without just compensation. Review of final agency action for the purpose of determining whether the action is in accordance with existing statutes or rules and based on competent substantial evidence shall proceed in accordance with chapter 120.