THOMPSON, Judge.
The State of Florida (State) and the Department of Environmental Regulation *869 (DER) appeal a final judgment which found a taking by the State and ordered the State to institute eminent domain proceedings. We reverse.
In 1967 and 1968 Atlantic International Investment Corporation (Atlantic) bought approximately 14,000 acres of land in Volu-sia and Brevard Counties at a cost of slightly more than $7,000,000. Atlantic is owned by Mondex, a development corporation, which is owned by Summit Organization, a holding company. This land was platted as a subdivision known as Cape Atlantic Estates (CAE) and was registered with the Division of Florida Land Sales and Condominiums (DFLS & C), a division of the Department of Business Regulation (DBR) or with its predecessor, the Florida Land Sales Board. Atlantic sold one and one-quarter and two and one-half acre lots in CAE under agreements for deed primarily to non-Florida residents by telephone. The agreements provided the land would be improved by graded dirt roads and drainage, with costs thereof advanced by Atlantic and repaid through assessments against the property. Some of the agreements for deed or contracts offered by Atlantic during trial indicated that the South County Drainage District (SCDD), initially created by Ch. 67-1022, Laws of Fla., would install the ditches and canals by 1973 and would maintain the roads and ditches. DFLS & C required Atlantic to enter into an improvement trust agreement. Improvements to CAE were begun in 1967 first under the Bristol plan and then under the Garcia plan. By 1970 Atlantic had expended about $560,-000 for improvements and had completed a 12 mile main outfall canal. Atlantic voluntarily suspended sales of lots in CAE in 1972, when more than 95% of the lots were subject to agreements for deed. According to Mr. Trella, President of Atlantic and a member of SCDD’s board, Atlantic sold approximately $28,000,000 worth of lots in CAE.
Volusia and Brevard Counties objected to SCDD’s 1971 petition in circuit court to amend the reclamation plan for CAE. The Department of Pollution Control (DPC), DER’s predecessor, moved to intervene and to file objections to SCDD s amended reclamation plan. Also in 1971 DPC asserted that it had permitting jurisdiction over CAE. The circuit court’s decision that Vol-usia County’s 1970 home rule charter abolished SCDD, that SCDD’s obligations were assumed by Volusia, and that SCDD’s attempt to extend its boundaries into Brevard County was void were affirmed in South County Drainage District v. Brevard County, 277 So.2d 31 (Fla. 1st DCA), cert. denied, 281 So.2d 211 (Fla.1973). In December 1973, after the termination of the SCDD litigation, Atlantic and Volusia County entered into an agreement forming a special improvement district with the same name as SCDD to fulfill the “functions, responsibilities, duties and obligations” of the former SCDD in Volusia County. Atlantic ultimately applied with DPC for a permit in September 1974.
In August 1974 DFLS & C ordered Atlantic to show cause why its order of registration should not be suspended or revoked. In a November 6, 1974 letter the regional engineer of the waste-water section of DPC informed Garcia, engineer for SCDD, that based on review by the regional staff and comments from Volusia and Brevard Counties, Atlantic’s permit was denied. The letter stated Atlantic had not reasonably assured DPC that the results of the project would be in accord with applicable laws, rules, and regulations, and that in DPC’s opinion “the project [would] have significant adverse effects on water quality as well as the aquatic resources in the area.”
In February 1975 Atlantic filed a petition for declaratory judgment in Leon County Circuit Court against DBR, DFLS & C, DPC, and Volusia County. This petition requested that Volusia County be required to drain CAE and install improved dirt roads in CAE within a reasonable period of time, that DPC be required to approve Atlantic’s plans and issue a permit to improve and drain CAE, that DPC be enjoined from interfering with the improvement and drainage of CAE, and that DBR and DFLS & C be enjoined from revoking or suspending Atlantic’s registration to sell land in *870 CAE until the court determined the parties’ rights and obligations. Alternatively, Atlantic requested in excess of $30,000,000 from the State and the defendants for impairment of contract between Atlantic and the CAE lot purchasers, between Atlantic and SCDD, and between Atlantic and Volu-sia County. Atlantic also sought, alternatively, in excess of $30,000,000 from the State for a taking of private property without compensation. As an additional alternative remedy, Atlantic sought in excess of $30,000,000 against Volusia County for breach of contract. Atlantic also requested that DFLS & C be restrained from revoking or suspending Atlantic’s registration to sell land in CAE. The Leon County Circuit Court issued a temporary injunction restraining DPC, DBR, and DFLS & C from interfering with Atlantic’s improvements and sales of CAE. Atlantic was also restrained from selling any lots in CAE as approved by DFLS & C’s registration orders until further order of the court. At a subsequent hearing the injunction was dissolved, the lower court retained jurisdiction of the taking issue pending completion of the administrative proceedings, and Atlantic was permitted to amend its complaint. Volusia County’s motion to dismiss Atlantic’s amended complaint and to strike portions of Atlantic’s amended complaint was denied in a May 27, 1975 order. Volusia’s interlocutory appeal from this order was dismissed with no finding of reversible error. Volusia County v. Department of Business Regulation; 325 So.2d 454 (Fla. 1st DCA 1976).
Atlantic sought administrative review of the DPC letter denying the permit. In December 1975 a hearing officer recommended that the permit issue, subject to certain conditions. However, in May 1976 DER entered a final order denying the permit. Atlantic then filed a petition for writ of certiorari in this court and an appeal with the Environmental Regulation Commission, regarding DER’s final order denying the permit. Prior to a decision by this court on the petition for certiorari, but subsequent to oral arguments, Atlantic and DER entered into a stipulation and consent agreement which provided, inter alia, the following: (1) a 13-month baseline study would be conducted to establish water quality standards for discharges from the project; (2) that after construction of a modified drainage facility DER would issue a 3-year temporary operation permit if the facility complied with the plans attached to the agreement; (3) that the facility would be monitored; and (4) if, upon expiration of the temporary permit no water quality violations remained uncured, DER would issue the operation permit. The parties’ joint motion for this court’s approval of this agreement stated that it “resolve[d] or rendered] moot all issues formerly in dispute before this Court.” On June 29, 1977, this court approved the stipulation and consent agreement, vacated the DER order sought to be reviewed, remanded to DER for proceedings consistent with the terms and conditions of the stipulation and consent agreement, and dismissed the petition for writ of certiorari.
In August 1977 St. Johns River Water Management District (St. Johns) notified Atlantic it was considering asserting jurisdiction over CAE. In March 1978 Atlantic notified DFLS & C that completion of the CAE improvements was impossible. DFLS & C rejected Atlantic’s proposal to offer its remaining inventory in CAE as an alternative to cash payments from the improvement trust funds at the customers’ option. Subsequent to DFLS & C’s issuance of a March 1979 notice to show cause, Atlantic filed suit in Leon County Circuit Court against DFLS & C alleging breach of the 1973 improvement trust agreements. This action was consolidated with the 1975 Declaratory Judgment action in Leon County Circuit Court. Atlantic filed an amended and supplemental complaint against DFLS & C, DBR, DER, Volusia County, St. Johns, and the State of Florida. The complaint was dismissed as to St. Johns for failure to state a cause of action against St. Johns. Atlantic’s second amended and supplemental complaint asserted a taking on or before September 1,1977 against DFLS & C, DBR, DER, Volusia, and the State, and a $30,000,- *871 000 breach of contract action against Volu-sia County and the State. The taking count against Volusia County was dismissed and the breach of contract action was severed for purposes of trial. However, the trial court’s order specifically stated that the dismissal of Volusia County did not prevent proof of Volusia’s actions and of their cumulative effect on Atlantic’s property. Motions to dismiss by DER, DBR, and the State were denied. Volusia County’s motion for judgment on the pleadings was granted as to the breach of contract count. Atlantic’s cross-appeal regarding the final judgment dismissing Volusia County as a defendant was dismissed by this court pursuant to a motion by Volusia County. Atlantic’s subsequent petition for writ of mandamus, filed with the Florida Supreme Court, requesting that this court be directed to exercise appellate jurisdiction over this cross-appeal was denied. Atlantic International Investment Corporation v. District Court of Appeal, First District, 440 So.2d 351 (Fla.1983).
Claude and Geraldine Rosser and Max Simon, purchasers of lots in CAE, moved to intervene in the case. Their motions to intervene were granted, subject to their filing an assignment from Atlantic of its cause of action for inverse condemnation as to the lots under contract to the Rossers and Simon as of the date of the alleged taking. This assignment from Atlantic to the Rossers and Simon was subsequently filed with the circuit court. The circuit court certified the class defined as all deeded lot purchasers in CAE and all purchasers who were paying on agreements for deed in CAE and who had not been declared in default. Simon’s motion to represent the class was granted and the Rossers’ motion to represent the class was denied.
Prior to trial the lower court entered an order stating that the action regarding the taking of monies in the trust fund was abated in this action as DBR had no claim to the monies, that entitlement to the trust funds would be decided in the interpleader action in another case, and that the parties’ actions regarding the fund would not be relevant to Atlantic’s claim that lots in CAE had been “taken” in 1977. At the close of Atlantic’s case in the four day non-jury trial, DFLS & C and DBR were dismissed. Atlantic’s cross-appeal regarding the final judgment dismissing DBR as a defendant was dismissed by this court pursuant to a motion by DBR. Atlantic subsequently filed a petition for writ of mandamus with the Florida Supreme Court, requesting that this court be directed to exercise appellate jurisdiction over this cross-appeal. This petition for writ of mandamus was consolidated with the petition for writ of mandamus regarding dismissal of Atlantic’s cross-appeal against Volusia and the petitions were denied. Atlantic International Investment Corp. v. District Court of Appeal, First District, Nos. 63,175 and 63,-446 (Fla. August 3, 1983).
In a 50 page final judgment the lower court found that the “cumulative effects of the actions of the various agencies of the State” amounted to a taking as of September 1,1977 and ordered that the state institute eminent domain proceedings.
We reverse the final judgment entered below. Under the rationale enunciated in Key Haven Associated Enterprises, Inc. v. Board of Trustees of the Internal Improvement Trust Fund, 427 So.2d 153 (Fla.1982), Atlantic’s election to file a petition for writ of certiorari in this court in 1976 foreclosed it from proceeding with an alternative remedy in circuit court. Additionally, even if Atlantic had not made a choice of the type described in Key Haven, the judgment on appeal would be reversed because the facts do not support the trial court’s finding that there was a taking.
By contesting the validity of DER’s denial of the permit in a petition for writ of certiorari Atlantic elected the district court as the judicial forum and was thereby foreclosed from proceeding with an alternate remedy in circuit court. See Key Haven, 427 So.2d 153 (Fla.1982). Atlantic’s taking claim regarding the lots in CAE could and should have been raised in the 1976 action in this court. By proceeding in circuit court *872 on a taking claim, after Atlantic had sought review of DER’s denial of the permit in this court and after it had entered into a stipulation and consent agreement with DER, which was approved by this court, Atlantic effectively sought to do that which is impermissible under Key Haven. Atlantic’s position at oral argument that the final executive action was the grant of a DER permit in 1977, such that the petition for writ of certiorari filed in this court was not an election of the type discussed in Key Haven, is simply not tenable. The May 1976 DER order denying the permit was clearly final agency action. Indeed, in 1976 Atlantic must have felt DER’s denial of the permit was final agency action since it sought a review thereof in this court. That the circuit court reserved jurisdiction on the taking issue in 1975 when dismissing the temporary injunction is of no consequence, especially sincé Atlantic subsequently filed a petition for writ of certiorari in this court after DER denied the permit, instead of electing to return to circuit court.
Even if Atlantic’s petition for writ of certiorari filed in this court had not been an election of the type discussed in Key Haven, the trial court erred in finding a taking because the facts herein do not support such a finding. See generally Graham v. Estuary Properties, Inc., 399 So.2d 1374 (Fla.), cert. denied, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981). Even assuming, solely for the purposes of argument, that the State is liable for the collective acts of DPC, DER, SCDD, Volusia County, and St. Johns, we conclude from the facts that there was no basis upon which to find a taking.
Although the trial court found that the cost of improvements to CAE increased, in 1977 prices, from $6,000,000 to $17,000,000 primarily because of the requirement of stabilized roads and the extra handling of materials, these increased costs of improvement cannot be attributed to DER. Stabilized roads were not required by the terms of the 1977 stipulation and consent agreement which Atlantic entered into, apparently knowingly and voluntarily, with DER. Additionally, stabilized roads were not required by DER.
Atlantic’s position that delay in the permitting process between 1971, when DPC intervened in the SCDD litigation and asserted permitting authority, and 1974 should be attributed to DER is not tenable because Atlantic did not file a permit application until September 1974. Atlantic cites Fla.Admin. Code Rule 17-4.07(2) for the proposition that DPC required it to conduct pre-application discussions with DPC prior to filing a permit application. Rule 17-4.-07(2) does not support this proposition, as it deals with applications which have been filed with DPC but which have been found to be deficient by DPC. Florida Administrative Code Rule 17-4.07(8) also does not support Atlantic’s argument. Even Fla.Admin. Code Rule 17-4.06, regarding consultations, is permissive and not mandatory. DPC’s rules did not forbid Atlantic to file an application with DPC prior to such consultation. Had Atlantic filed an application, DPC’s rules would have required an agency decision within 60 days. See Fla. Admin. Code Rule 17 — 4.07(1). If Atlantic had filed such an application and if DPC had granted the permit, Atlantic would presumably have received that which it desired. On the other hand, if Atlantic had filed such an application and DPC had denied the permit, Atlantic could have sought review of the agency action. However, Atlantic chose to wait until September 1974 to file an application. Accordingly, any delay between 1971 and 1974 regarding the permitting was of Atlantic’s own making and cannot now be attributed to DPC.
As a result of our decision that Atlantic made a Key Haven choice when it filed a petition for writ of certiorari in this court in 1976 and that there is no basis for a taking, the remaining points raised by the State and DER need not be addressed. The final judgment of the lower court is reversed with instructions to enter judgment for the State and DER.
REVERSED.
ROBERT P. SMITH, Jr. and WENT-WORTH, JJ., concur.