# DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES v ARTHRITIS MEDICAL CENTER, INC.

Case No. 88-1459

State of Florida, Division of Administrative Hearings

August 30, 1988

### APPEARANCES OF COUNSEL

**Richard A. Patterson,** for petitioner.

**Karen Coolman Amlong,** for respondent.

## OPINION OF THE COURT

DONALD R. ALEXANDER, Hearing Officer.

### *RECOMMENDED ORDER*

Pursuant to notice, the above matter was heard before the Division of Administrative Hearings by its duly designated Hearing Officer, Donald R. Alexander, on July 25, 1988, in Fort Lauderdale, Florida.

### *BACKGROUND*

By administrative complaint, petitioner, Department of Health and

Rehabilitative Services, sought to impose a $10,000 administrative fine on respondent, Arthritis Medical Center, Inc., for failing to allow HRS to inspect its premises on two occasions.[1] The purpose of the inspections was to determine whether respondent was complying with Chapter 499, Florida Statutes (1987), and Chapter 10D-45, Florida Administrative Code (1987), and particularly whether adulterated, misbranded or unsanitary drugs were on the premises.

Respondent did not dispute the above allegations but contended it was not licensed by HRS and that the statute and rule which authorized such inspections were unconstitutional. The matter was referred by petitioner to the Division of Administrative Hearings on March 30, 1988, with a request that a hearing officer be assigned to conduct a formal hearing. By notice of hearing dated May 12, 1988, the final hearing was scheduled on July 25, 1988 in Fort Lauderdale, Florida. On July 22, 1988 the case was transferred from Hearing Officer William J. Kendrick to the undersigned.

At final hearing, petitioner presented the testimony of Richard R. Grant, administrator for HRS' pharmacy services program, and Greg Jones and Robert A. Loudis, both HRS regional drug inspectors. It also offered petitioner's exhibits 1-6. All exhibits were received in evidence except exhibits 2 and 3. Respondent offered respondent's exhibit 1 which was received in evidence.

The transcript of hearing was filed on August 15, 1988. Proposed findings of fact and conclusions of law were filed by petitioner and respondent on August 22 and 23, 2988, respectively. A ruling on each proposed finding is made in the Appendix attached to this Recommended Order.

The issue is whether respondent should pay a $10,000 administrative fine for refusing to allow HRS inspectors on its premises.

Based upon all of the evidence, the following findings of fact are determined:

### FINDINGS OF FACT

1. At all times relevant hereto, respondent, Arthritis Medical Center, Inc. (AMC) operated a facility at 901 Southeast 17th Street, Fort Lauderdale, Florida. According to its business card, AMC provides a "Hormone Balance Treatment" to patients suffering from arthritis and uses a "medication" that "combines three separate hormones —

---

[1] The complaint named Donna Pinorsky Rothblatt, Administrator, Arthritis Medical Center, as respondent. At hearing, the undersigned granted petitioner's ore tenus motion to substitute arthritis Medical Center, Inc. as respondent.

glucocorticoid and the male and female sex hormones." the card represents that AMC collaborates with a "medical staff" and that its registered nurse administrator was one Donna Pinorsky.[2] The card reflects also that AMC has a facility at 2025 Broadway, #19D, New York City. The parties have stipulated that respondent holds no licenses or permits from any state regulatory agency. Further, it has no pending application for any permit.

2. Petitioner, Department of Health and Rehabilitative Services (HRS), is charged with the responsibility of protecting the public health, regarding commerce of drugs, devices and cosmetics, through its pharmacy services program, HRS issues permits, to those persons or establishments, and other pharmacies, who provide or sell legend drugs, devices or cosmetics to the public. Also, the agency inspects both permitted and unpermitted facilities that hold drugs, devices or cosmetics to ensure that adulterated, misbranded or unsanitary drugs are not dispensed to the public. To this end, HRS employs licensed pharmacists who make random, unannounced inspections of such facilities. This case arises out of two unsuccessful efforts by HRS inspectors to inspect respondent's facility. The inspections were prompted by HRS' receipt of a letter from the Department of Professional Regulation. The contents of the letter were not disclosed.

3. On the afternoon of January 16, 1987, HRS inspectors Jones, Loudis and White, all licensed pharmacists, visited AMC's facility in Fort Lauderdale for the purpose of inspecting any legend drugs, devices or cosmetics that might be on the premises. They were met by Pinorsky, the facility's administrator. After identifying themselves, Pinorsky picked up a hand held tape recorder and began taping the conversation. Pinorsky first acknowledged that a "Doctor Kline," whose sign was on the outside of the building, had offices at the facility but was not present. She also gave the inspectors an AMC business card which contained the information set forth in finding of fact 1. When the inspectors asked if any hormones were kept on the premises, Pinorsky responded by asking if the inspectors had a subpoena. After being told there was none, she read the inspectors the following statement:

> On advice of counsel, under the United States Supreme (Court) decision See's vs City of Seattle, Washington, I must decline to allow a search without a search warrant signed by a Judicial officer. And, if such warrant has been issued on advice of counsel I decline to

---

[2] Pinorsky is also known as Donna Pinorsky Rothblatt but, for purposes of this order, will be referred to as Pinorsky.

consent to a search until a Court has ruled on a motion to quash under the Fourth and Fourteenth Amendments to the United States Constitution.

My local attorney is    Larry Altman
                                   P.O. Box 402404
                                   Miami Beach, FL 33140

My general counsel is John Burgess
                                   2000 Powell St.
                                   Suite 1680
                                   Emoryville, CA 94608

The inspection ended at that point.

4. Around 4:15 p.m. on March 13, 1987 Jones and Loudis returned to AMC's place of business for the purpose of conducting an inspection. They were met by one Kathy Bentley, a secretary, who was told the purpose of the visit. Bentley would not allow the inspection to be made because the "nurse" was not present. Pinorsky then entered the room carrying a "toddler." After putting the child down, Pinorsky immediately set up a tape recorder and began recording the conversation. After identifying themselves, the inspectors requested they be permitted to inspect the facility to ensure compliance with Chapter 499, Florida Statutes. Pinorsky denied their request saying there was ongoing "litigation" over their right to inspect the facility. The inspection ended at that point.

5. Based upon two unsuccessful efforts to inspect AMC's facility, an administrative complaint was issued by HRS in January, 1988. The complaint is the second administrative action taken against respondent. The first culminated in a Final Order issued on October 22, 1986 imposing a $500 fine on respondent for refusing to allow inspectors to inspect its facility on April 30, 1986.

6. The inspectors had no search warrants to inspect AMC's facility nor had there been any finding of probable cause by a judge or magistrate that a statutory violation may have taken place on AMC's premises. Also, the inspectors did not know the precise nature of respondent's business or whether any drugs were actually kept on the premises. Indeed, Pinorsky never admitted that any were kept at the facility. The inspectors estimated that approximately forty percent of all inspections are on nonpermitted facilities. The inspections are made on a random basis or after the receipt of information from other agencies suggesting that one be made. In 1986-87, HRS inspected more than 350 health maintenance organizations, doctor's offices and medical centers as well as other establishments that hold drugs, devices and

200

cosmetics. The basis for and criteria used in such inspections are set forth in a written HRS "operational guide." This document is not of record.

7. Based upon (a) the representations in AMC's business card that it "treats" arthritis patients and that a "medication" is given to them, (b) the use of the term "medical center" in respondent's business name, and (c) the fact that a physician has offices at AMC's facility, it may be logically inferred that AMC is an establishment that holds or maintains drugs on its premises.

### CONCLUSIONS OF LAW

1. The Division of Administrative Hearings has jurisdiction of the subject matter and the parties thereto pursuant to Section 120.57(1), Florida Statutes (1987).

2. The administrative complaint alleges that respondent violated Subsection 499.005(5), Florida Statutes (1987), by failing to grant HRS inspectors access to its premises. That statute makes unlawful the following action:

(b) The refusal to permit entry or inspection by the department of factories, warehouses or establishments in which drugs, devices or cosmetics are manufactured, processed, repackaged or held; . . . or by the refusal to permit the taking of samples by the department.

3. As authority for its right to inspect respondent's premises, HRS cites to Rule 10D-45.0545, Florida Administrative Code (1987). That rule provides in pertinent part:

(1) *An inspection is an official review or examination of a facility* which includes spaces, records, products, labels, documents of a permitted or licensed business under the provisions of Chapter 499 or any rule promulgated thereunder, *or of a nonregistered facility for the purpose of determining that the consumer is protected from misbranded or adulterated drugs, devices or cosmetics or any other violation of Chapter 499 or rules promulgated thereunder. An inspection may also take place in a nonregistered facility for determining permitting requirements under Chapter 499, F.S.* These inspections shall be considered inspections under the provision of Chapter 499 or any rules promulgated thereunder for the protection of the public health through the State. All Chapter 499 permitted and licensed facilities will be inspected at least on an annual basis by an agent of the Department.

\* \* \*

(3) Inspections may be announced or unannounced, at the discretion

**201**

of the Department. *Any owner, officer, or employee of the establishment or business shall make the premises available to the inspection officer and shall make all records and other information required by Chapter 499, F.S. and the rules promulgated thereunder available to the inspecting officer.* (Emphasis added)

* * *

4. Petitioner posits that by refusing "to permit entry or inspection of (an) establishment in which drugs, devices, or costmetics are . . . held," respondent has violated both Subsection 499.005(6) and Rule 10D-45.0545. Given respondent's prior violation of the same statute and rule, HRS seeks to impose a $5000 file for each violation, or a total fine of $10,000. In reply, respondent asserts that there is no evidence as to the nature of respondent's business, and that absent any proof that drugs are on the premises, the complaint should not lie. Respondent contends also that the statute and rule are facially invalid on constitutional grounds. While the undersigned has no authority to resolve the latter issue, the proceeding can be used to make a record basis so as to preserve the issue for an appellate court. See, e.g., *Key Haven Associated Enterprises, Inc. v Board of Trustees of Internal Improvement Fund,* 427 So.2d 153, 157-58 (Fla. 1982). Even so, for purposes of this case, the undersigned must assume the statute and rule are valid.

5. At hearing respondent objected to the substitution of the corporate entity, Arthritis Medical Center, Inc., for the previously named respondent, "Donna Pinorsky Rothblatt, Administrator, Arthritis Medical Center." It contended that by allowing the amendment, the corporate entity had insufficient notice of the matter. However, this contention is deemed to be without merit. Respondent asserted also that there is no record proof that an entity by the name of Arthritis Medical Center, Inc. exists. However, the totality of the evidence gives rise to an inference that a legal entity with the name Arthritis Medical Center, Inc. exists and that it was doing business at the address cited in the complaint. No contrary proof as to this inference was submitted.

6. Petitioner does not address the issue of whether there is an adequate record basis to find that drugs were "held" on respondent's premises so as to justify an inspection. However, the evidence supports an inference that there were, and respondent did not rebut this inference. As noted in finding of fact 7, respondent's name includes the words "medical center," the facility purports to "treat" arthritis patients, its business card states that a "medication" is given to patients, and a doctor has offices in the facility. These facts give rise to

202

a clear inference that drugs are maintained or held at the facility. Therefore, it is concluded that petitioner had a reasonable basis to make an inspection of respondent's facility.

7. The parties have stipulated that respondent twice refused access to HRS inspectors during normal business hours. This being so, it is concluded that respondent has violated Subsection 499.005(6) and Rule 10D-45.0545 on two occasions.

8. Subsection 499.066(4), Florida Statutes (1987) authorizes HRS to impose administrative fines of up to $5,000 per violation. In determining the amount of the fine, the statute requires the agency to consider the severity of the violation, any action taken by the permittee to correct the violation or to remedy the complaint and any previous violations. Given the repeated nature of the violation, respondent's lack of corrective action and respondent's prior violation in 1986, the suggested $10,000 fine is appropriate.

## RECOMMENDATION

Based on the foregoing findings of fact and conclusions of law, it is

RECOMMENDED that respondent be found guilty of violating Subsection 499.005(6), Florida Statutes (1987), and Rule 10D-45.0545, Florida Administrative Code (1987), on two occasions and that it pay $5,000 for each violation, or a total of $10,000, said fine to be paid within 30 days from the date of the Final Order rendered in this matter.

DONE AND ORDERED this 30th day of August, 1988, in Tallahassee, Leon County, Florida.