720 So.2d 563 (1998)
CHRYSLER CORPORATION, Appellant,
v.
FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES, Appellee.
No. 97-3421.
District Court of Appeal of Florida, First District.
September 28, 1998.
Rehearing Denied November 19, 1998.
*564 Dean Bunch, of Sutherland, Asbill & Brennan, L.L.P., Tallahassee; Allan M. Huss, of Chrysler Corporation, Auburn Hills, Michigan; Erika Z. Jones & John J. Sullivan, of Mayer, Brown & Platt, Washington, D.C., for Appellant.
Robert A. Butterworth, Attorney General; Amelia L. Beisner, Assistant Attorney General, Tallahassee, for Appellee.
Thomas H. Yardley, Cocoa, for Intervenor Massey Yardley Chrysler Plymouth, Inc., d/b/a Massey Yardley Chrysler Plymouth Jeep Eagle.
Kenneth L. Paretti, of Adams & Quinton, P.A., Miami, for Intervenors Tamiami Auto Group, Inc., d/b/a Tamiami Chrysler Plymouth Jeep Eagle; Potamkin Chrysler Plymouth, Inc., d/b/a Potamkin Chrysler Plymouth Jeep Eagle; Hollywood Chrysler Plymouth, Inc., d/b/a Hollywood Chrysler Plymouth Jeep Eagle; Potamkin Chevrolet, Inc., d/b/a Potamkin Dodge; Dade Jeep Eagle Chrysler Plymouth, Inc., d/b/a Dade Chrysler Plymouth and d/b/a/ Dade Jeep Eagle; and Colonial Pontiac, Inc., d/b/a Colonial Jeep Eagle Chrysler Plymouth.
Cynthia S. Tunnicliff, of Pennington, Moore, Wilkinson, Bell & Dunbar, Tallahassee, Amicus Curiae for Florida Automobile Dealers Association.
Wade L. Hopping, of Hopping Green Sams & Smith, P.A., Tallahassee, and Michael K. Brown, of Law Office of Michael K. Brown, Westport, Connecticut, Amici Curiae for American Automobile Manufacturers Association and Association of International Automobile Manufacturers, Inc.
SHIVERS, DOUGLASS B., Senior Judge.
Chrysler Corporation (Chrysler) appeals a final judgment dismissing, with prejudice, its complaint for injunctive and declaratory relief. We affirm in part, reverse in part, and remand the cause for further proceedings in the trial court relating to Chrysler's challenge to the facial constitutionality of section 320.641(3), Florida Statutes (1995). Key Haven Associated Enterprises, Inc. v. Board of Trustees of the Internal Improvement Trust Fund, 427 So.2d 153, 157 (Fla.1982).
*565 Chrysler is a motor vehicle manufacturer with its principal place of business in Michigan. The corporation sells motor vehicles worldwide through an extensive network of motor vehicle distributors and dealers in the United States and abroad. Chrysler is licensed by the appellee, Florida Department of Highway Safety and Motor Vehicles (Department), to distribute motor vehicles to franchised dealers for resale in the State of Florida. Among the Department's administrative duties under chapter 320, Florida Statutes (1995), is the regulation of the franchise agreements between Florida dealers and motor vehicle manufacturers, including Chrysler.
For many years, Chrysler has had a corporate policy of discouraging domestic dealers' unauthorized exports of Chrysler motor vehicles manufactured for sale in the United States. Chrysler contends that in contravention of this policy, some Chrysler dealers (including the Florida dealers who initiated the original administrative proceedings in this case) have sold, for international export, Chrysler motor vehicles that were manufactured and intended for sale in the United States only. As a consequence, and over Chrysler's objection, a substantial international "gray market" has developed. The instant record is replete with examples of the adverse financial and public relations consequences that have attended the sale of United States-only motor vehicles in other countries that have different driving conditions and varying laws and regulatory requirements relating to safety features, emissions performance, technical standards, and legal certification. Because of the operation of the international gray market, Chrysler was unable to ensure that its motor vehicles shipped abroad by United States dealers complied with all of the requirements of the nations to which they were exported. International gray market sales tainted Chrysler's relations with its foreign distributors and dealers as well as with its retail customers in other countries. Unable to track the ownership of such vehicles, Chrysler could not conduct effective recall campaigns when the need arose. Some foreign customers could not receive warranty service because most motor vehicles sold to United States dealers do not have warranty coverage when they are registered outside the United States or Canada.
To address these serious problems, Chrysler announced to all of its United States motor vehicle dealers in May 1996 the adoption of a proposed amendment to the standard (direct dealer or sales and service) franchise agreement that the corporation has with each of its dealers. The amendment makes explicit the prohibition of United States dealers' exporting new Chrysler motor vehicles that were manufactured for the domestic market only. According to the amended provision, Chrysler's direct dealers
shall have the non-exclusive right, subject to the provisions of this Agreement, to purchase from CHRYSLER new ... vehicles that are manufactured for sale within the United States for resale to customers located within the United States (or to other authorized ... dealers located within the United States) and vehicle parts, accessories, and other CHRYSLER products for resale at DIRECT DEALER'S facilities and location....DIRECT DEALER is free to sell [Chrysler] vehicles to customers located within the United States wherever they may be located within the United States, and vehicle parts and accessories to customers wherever they may be located....DIRECT DEALER must not sell new motor vehicles for resale, registration or principal use outside the United States. DIRECT DEALER also must not sell any new motor vehicles that were not originally manufactured for sale and distribution within the United States.
In July 1996, Chrysler officially notified its Florida dealers of the proposed modification of the standard franchise agreement, which was expected to become effective in Florida 90 days after issuance of the notice.
The statute governing notice requirements regarding proposed modifications of franchise agreements between motor vehicle manufacturers ("licensees") and dealers states in pertinent part:
320.641 Unfair cancellation of franchise agreements.
(1)(a) An applicant or licensee shall give written notice to the motor vehicle dealer *566 and the department of the licensee's intention to discontinue, cancel, or fail to renew a franchise agreement or of the licensee's intention to modify a franchise or replace a franchise with a succeeding franchise, which modification or replacement will adversely alter the rights or obligations of a motor vehicle dealer under an existing franchise agreement or will substantially impair the sales, service obligations, or investment of the motor vehicle dealer, at least 90 days before the effective date thereof, together with the specific grounds for such action.
§ 320.641(1)(a), Fla. Stat. (1995). In its timely notice, Chrysler set out five specific grounds for the amendment: 1) the need to track ownership of United States-manufactured motor vehicles exported to foreign markets; 2) the need for certainty that motor vehicles shipped to other countries comply with the safety or emissions requirements of the place where they will be registered; 3) the need to conduct effective recall campaigns when necessary; 4) the necessity of providing effective warranty service to retail customers; and 5) the need to fulfill Chrysler's obligation to support its worldwide dealership network. The Florida dealers were notified that the proposal to amend the franchise agreements might fall within the intended coverage of another part of the same statute, which states:
(3) Any motor vehicle dealer whose franchise agreement is discontinued, canceled, not renewed, modified, or replaced may, within the 90-day notice period, file a petition or complaint for a determination of whether such action is an unfair or prohibited discontinuation, cancellation, nonrenewal, modification, or replacement. Agreements and certificates of appointment shall continue in effect until final determination of the issues raised in such petition or complaint by the motor vehicle dealer. A discontinuation, cancellation, or nonrenewal of a franchise agreement is unfair if it is not clearly permitted by the franchise agreement; is not undertaken in good faith; is not undertaken for good cause; or is based on an alleged breach of the franchise agreement which is not in fact a material and substantial breach.
§ 320.641(3), Fla. Stat. (1995).
In September 1996, seven Florida Chrysler motor vehicle dealers filed with the Department an administrative complaint against Chrysler seeking relief pursuant to section 320.641(3), Florida Statutes (1995), and requesting a determination as to whether Chrysler's proposed modification 1) is void as "unfair" to the dealers; 2) violates chapter 320; and 3) is void because it will adversely alter the dealers' rights under the existing franchise agreement or substantially impair the dealers' sales and service obligations or investment. Upon the filing of the complaint, the proposed modification of the franchise agreement was automatically stayed as to the seven Florida franchises challenging the modification. § 320.641(3), Fla. Stat. (1995).
In November 1996, Chrysler filed with the Department an answer to the complaint and affirmative defenses, along with a motion to dismiss on the grounds that application of the above-noted statutory provisions to the proposed amendment of the franchise agreement would violate both the United States and Florida Constitutions. In its five affirmative defenses, Chrysler alleged 1) that the dealers' complaint failed to state a cause of action; 2) that chapter 320 is inapplicable because the proposed modification does not "adversely alter the rights or obligations" of the dealers or "substantially impair the sales, service obligations, or investment" of the dealers; 3) that chapter 320 cannot be constitutionally applied to Chrysler's acts relating to the proposed amendment because to do so would represent the exercise of an unconstitutional delegation of authority without appropriate legislative standards, in violation of Article II, § 3, of the Florida Constitution; 4) that to the extent chapter 320 is applied to Chrysler's actions with respect to the amendment and to certain dealers whose agreements predate the enactment of the most recent statutory modification, the statute is an unconstitutional retroactive impairment of a contract, in violation of the United States and Florida Constitutions; and 5) that any application of chapter 320 to the modification, *567 or to stay the modification pending the Department's investigation and decision whether to approve it, would be an unconstitutional burden upon foreign commerce, in violation of the federal Commerce Clause. The complainants/dealers responded, claiming that adequate statutory standards exist for the Department to determine the propriety of Chrysler's proposed amendment, and that no unconstitutional burden would be placed upon Chrysler's ability to conduct foreign commerce. The Department forwarded the matter to the Division of Administrative Hearings (D.O.A.H.), which has not ruled on the motion to dismiss. Meanwhile, the complainants/dealers and Chrysler agreed to stay the administrative proceedings.
In January 1997, after the commencement of the D.O.A.H. proceeding but before discovery, Chrysler filed a complaint in the circuit court against the Department seeking injunctive and declaratory relief from the alleged violation of Chrysler's constitutional rights. Chrysler challenged the constitutionality of provisions of chapter 320, Florida Statutes (1995), facially and as applied. In its facial challenge, Chrysler alleged that section 320.641(3), Florida Statutes (1995), "provides no standard to determine whether a franchise agreement modification is `unfair' or otherwise prohibited." In its as-applied challenge, Chrysler alleged that the application of chapter 320 to the proposed amendment impermissibly burdens foreign commerce in violation of the federal Commerce Clause.
The trial court granted a motion to intervene filed by the Florida Chrysler dealers who had participated in the administrative proceedings. The Department filed a motion to dismiss, arguing that dismissal was proper because of the pending administrative proceedings arising from the Florida dealers' complaint. Before the hearing on the Department's motion to dismiss, Chrysler filed a motion for summary judgment on its constitutional claims and sought to have its motion heard at the same time as the motion to dismiss.
At the August 1, 1997, motion hearing in the circuit court, the Department argued for dismissal on the grounds 1) that section 320.641 affords due-process rights to motor vehicle dealers when a manufacturer proposes to amend a franchise agreement; 2) that Chrysler was improperly trying to circumvent the usual administrative process; 3) that the D.O.A.H. proceedings would provide an adequate, readily available forum for developing a proper factual record concerning the fairness of the proposed modification; and 4) that after a factual record was prepared in the administrative arena, the district court of appeal would provide the most appropriate forum for Chrysler to raise its constitutional claims. On the other hand, the corporation argued that returning to the administrative forum would be futile and would harm Chrysler because no further factual record is necessary for resolution of its facial constitutional challenge, and the agency cannot decide constitutional issues. At the conclusion of the hearing, the trial judge announced:
Okay, I agree with the attorney general's office. I believe that the [Department's] motion is well taken, that the statute is constitutional. I think that the process should be in front of D.O.A.H. for a full factual determination, so I would grant the motion.
The trial court granted the Department's motion to dismiss and entered a final judgment dismissing Chrysler's complaint, with prejudice. The written rulings do not mention or address Chrysler's constitutional claims. Therefore, we cannot assume that the trial court actually ruled on the merits of Chrysler's constitutional claims. Chrysler's motion for summary judgment was not heard.
Chrysler contends on appeal that the trial court violated due process by ruling on the merits of Chrysler's constitutional claims without affording adequate notice and an opportunity to be heard. Assuming arguendo that the circuit court was authorized to dismiss its claims on the merits, Chrysler alleges error in the court's purported conclusion that chapter 320.641(3) is constitutional. Finally, Chrysler asserts that D.O.A.H. lacks authority to rule on the constitutional claims, so that a return to the administrative arena would be for naught.
The facial constitutionality of a statute cannot be decided in an administrative *568 proceeding. Department of Revenue v. Young American Builders, 330 So.2d 864 (Fla. 1st DCA 1976). In its seminal opinion in Key Haven, 427 So.2d at 153, the Supreme Court of Florida acknowledged that
[i]f the statute being implemented by an agency is claimed to be facially unconstitutional, the circuit court may, in appropriate circumstances, entertain a declaratory action on the statute's validity.
Id. at 157; Gulf Pines Memorial Park, Inc. v. Oaklawn Memorial Park, Inc., 361 So.2d 695, 699 (Fla.1978). The constitutional claim in Gulf Pines was that the cemetery licensing statute being implemented by the agency represented an invalid delegation of legislative authority. Under those circumstances, "when the administrative proceedings can have no effect on the constitutional issue to be presented to the circuit court," Key Haven, 427 So.2d at 157, the supreme court has stated that "it is pointless to require applicants to endure the time and expense of full administrative proceedings." Gulf Pines, 361 So.2d at 699.
Insofar as Chrysler's facial constitutional challenge is concerned, we conclude that the trial court is the proper forum under Key Haven for resolution of this question. 427 So.2d at 157; Butler v. State of Florida, Department of Insurance, 680 So.2d 1103 (Fla. 1st DCA 1996) (action in circuit court was proper means for commercial property developer to challenge facial validity of anti-rebate statutory scheme); Glendale Federal Savings and Loan Association v. State of Florida, Department of Insurance, 485 So.2d 1321, 1324-25 (Fla. 1st DCA 1986). As a matter of judicial policy, this case presents the sort of extraordinary circumstances contemplated in Key Haven, 427 So.2d at 157. If Chrysler is correct that the statute is unconstitutional on its face because of a lack of standards for determining when a proposed modification is "unfair or otherwise prohibited," then the extraordinary relief of a declaratory judgment is justified before Chrysler is required to incur the expense of litigating in the administrative forum to determine if this proposed modification is unfair or otherwise prohibited. Accordingly, we reverse that portion of the final judgment dismissing the facial constitutional claim, and remand the cause to the circuit court for further proceedings on that claim. Regarding the as-applied constitutional challenge, we conclude that the trial court correctly ruled that Chrysler must exhaust its available administrative remedies. Accordingly, we affirm that portion of the final judgment of dismissal. Key Haven, 427 So.2d at 158; Baillie v. Department of Natural Resources, Division of Beaches and Shores, 632 So.2d 1114, 1119 (Fla. 1st DCA 1994) ("With a fully developed record, a reviewing court is in a better position to afford all appropriate relief.").
AFFIRMING the final judgment of dismissal in part, REVERSING in part, and remanding for further proceedings in the circuit court relating to the facial constitutional challenge.
BARFIELD, C.J., and DAVIS, J., concur.