666 So.2d 882 (1996)
DEPARTMENT OF ENVIRONMENTAL PROTECTION, et al., Appellants,
v.
Bruce MILLENDER, et al., Appellees.
No. 85880.
Supreme Court of Florida.
January 18, 1996.
*883 Robert A. Butterworth, Attorney General and Jonathan A. Glogau, Assistant Attorney General, Tallahassee, on behalf of the Department of Environmental Protection, et al.; and Terry L. McCollough of Terry L. McCollough, P.A., Orlando, on behalf of Florida Conservation Association, for Appellants.
J. Patrick Floyd of J. Patrick Floyd, P.A., Port St. Joe, Florida, on behalf of Bruce Millender, et al.; Alfred O. Shuler of Shuler and Shuler, Apalachicola, Florida, on behalf of Franklin County; and Ronald A. Mowrey of Mowrey & Newman, P.A., Tallahassee, Florida, on behalf of Wakulla County, for Appellees.
SHAW, Justice.
We have for review a final declaratory judgment of the Circuit Court in Franklin County, construing article X, section 16, Florida Constitution, limiting marine net fishing. The First District Court of Appeal certified the trial court order to be of great public importance, requiring immediate resolution by this Court. We have jurisdiction. Art. V, § 3(b)(5), Fla. Const. We affirm the judgment of the trial court and hold that the trial court's construction of article X, section 16 of the Florida Constitution is correct, and that the Golden-Crum net meets the specifications of the amendment.
The controversy at issue involves the method of measuring trawl nets used for fishing in nearshore and inshore waters. Article X, section 16 states in pertinent part:

*884 SECTION 16. Limiting Marine Net Fishing. 
(a) The marine resources of the State of Florida belong to all of the people of the state and should be conserved and managed for the benefit of the state, its people, and future generations. To this end the people hereby enact limitations on marine net fishing in Florida waters to protect saltwater finfish, shellfish, and other marine animals from unnecessary killing, overfishing and waste.
(b) For the purpose of catching or taking any saltwater finfish, shellfish or other marine animals in Florida waters:
(1) No gill nets or other entangling nets shall be used in any Florida waters; and
(2) In addition to the prohibition set forth in (1), no other type of net containing more than 500 square feet of mesh area shall be used in nearshore and inshore Florida waters. Additionally, no more than two such nets, which shall not be connected, shall be used from any vessel, and no person not on a vessel shall use more than one such net in nearshore and inshore Florida waters.
(c) For purposes of this section:
(1) "gill net" means one or more walls of netting which captures saltwater finfish by ensnaring or entangling them in the meshes of the net by the gills, and "entangling net" means a drift net, trammell net, stab net, or any other net which captures saltwater finfish, shellfish, or other marine animals by causing all or part of heads, fins, legs, or other body parts to become entangled or ensnared in the meshes of the net, but a hand thrown cast net is not a gill net or an entangling net;
(2) "mesh area" of a net means the total area of netting with the meshes open to comprise the maximum square footage. The square footage shall be calculated using standard mathematical formulas for geometric shapes. Seines and other rectangular nets shall be calculated using maximum length and maximum width of the netting. Trawls and other bag type nets shall be calculated as a cone using the maximum circumference of the net mouth to derive the radius, and the maximum length from the net mouth to the tail end of the net to derive the slant height. Calculations for any other nets or combination type nets shall be based on the shapes of the individual components;
... .
Art. X, § 16, Fla. Const. (effective July 1, 1995).
The following factual background is pertinent. Ronald Crum hired Buford Golden, an experienced net maker, to construct a shrimp trawl[1] which would meet the amendment's specifications ("Golden-Crum net"). In light of the state's[2] assertion that the Golden-Crum net does not comply with article X, section 16, of the Florida Constitution, appellees Bruce Millender, Ronald Crum, and other commercial shrimpers along with intervenors Wakulla and Franklin Counties asked the circuit court to determine: (1) the appropriate method of measuring trawl nets under the amendment; (2) the meaning of "with the meshes open;" and (3) whether the Golden-Crum net was prohibited.
The trial court concluded that the Golden-Crum net contained less than 500 square feet of mesh area as determined by application of subsections (b)(2) and (c)(2) of the amendment. In reaching its determination, the court found that: (1) the amendment intends to limit not prohibit trawl nets in the nearshore and inshore waters of Florida; (2) the amendment contains an internal inconsistency within its terms, but the various provisions must and can be construed together in harmony granting import to each; (3) trawl nets must not contain more than 500 square feet of mesh area using the formula for the area of a cone (circumference of the mouth of the net times the slant height length divided *885 by two); and (4) the slant height equals the mid-point of the headrope (net mouth) to the tail of the net, with the meshes of the net in an open rather than closed or stretched position.
The basis of this appeal is a disagreement relative to the measurement of slant height. The state, FCA, and Millender present three different methods of calculating slant height.[3] FCA argues that the stretched mesh measurement should be used because the specific language of the fourth sentence in subsection (c)(2) governs over the general language of the first sentence of subsection (c)(2):
Sentence 1: `[M]esh area' of a net means the total area of netting with the meshes open to comprise the maximum square footage.
Sentence 4: Trawls and other bag type nets shall be calculated as a cone using ... the maximum length from the net mouth to the tail end of the net to derive the slant height.
Art. X, § 16(c)(2), Fla. Const. FCA contends that because the slant height of a net cannot be measured with all the meshes open, the language in the first sentence requiring measurement "with the meshes open" is overridden by the language in the fourth sentence requiring the net to be stretched to its "maximum length."[4]
The state argues that the "meshes open" language can be harmonized with the "maximum length" language by using its calculations to obtain slant height and is the correct method because the net mesh is oriented and hung on the diagonal.[5] Millender agrees that the "open mesh" language must be harmonized with the "maximum length" language. He uses the measurement across the bar (one side of one square) of the mesh because he claims it is the industry-accepted method of measuring open mesh and most nearly approximates the amount of raw net stock actually contained in the trawl.[6]
It is undisputed that Golden used less than 500 square feet of netting to construct the net. Notwithstanding the actual raw stock used, the FCA (stretched mesh method) measures the net at 953 square feet; the state (open mesh diagonal) measures the net at 673 square feet; and Millender (open mesh across the bar) measures the net at 476 square feet. The trial court found that Millender's method of measurement more closely complies with the amendment's specifications. The state raises two issues on appeal.
The state first argues that there is no evidence in the record to support the court's finding that the open mesh length is one half the stretched length. After examining the language of the amendment, we find that the first and fourth sentences within subsection (c)(2) are subject to varying interpretations. In construing article X, section 16, the trial judge was obviously attempting to ascertain and give effect to the intent of the drafters and those who voted on the amendment. Intent is traditionally discerned

*886 from historical precedent, from the present facts, from common sense, and from an examination of the purpose the provision was intended to accomplish and the evils sought to be prevented. Furthermore, we may look to the explanatory materials available to the people as a predicate for their decision as persuasive of their intent.
Plante v. Smathers, 372 So.2d 933, 936 (Fla. 1979) (citation omitted). The amendment should also be construed as a whole in order to ascertain the general purpose and meaning of each part; each subsection, sentence, and clause must be read in light of the others to form a congruous whole so as not to render any language superfluous. Less latitude is permitted when construing constitutional provisions because it is presumed that they have been more carefully and deliberately framed than statutes. City of Jacksonville v. Continental Can Co., 113 Fla. 168, 172, 151 So. 488, 489 (1933).
In light of these principles of construction, we examine the first sentence in subsection (c)(2) which states: "`mesh area' of a net means the total area of netting with the meshes open to comprise the maximum square footage" and the fourth sentence in subsection (c)(2) which states: "Trawls and other bag type nets shall be calculated as a cone using ... the maximum length from the net mouth to the tail end of the net to derive the slant height."
We conclude that had the drafters intended the maximum length from the net mouth to the tail end of the net to be measured using the stretched mesh method or the open mesh diagonal method, it would have been more clearly spelled out in the amendment. The record contains competent substantial evidence that the industry-accepted method of measuring open mesh is across the bar and that the bar length is one half the stretched mesh length. We hold that the "maximum length" required to measure the slant height from the net mouth to the tail end refers to the maximum length with the meshes open, measured in the usual way open mesh is measured  across the bar.[7]
We have previously stated that in order for voters to cast an intelligent and informed ballot, the ballot summary must provide fair notice of the content of the proposed amendment. In re Advisory Opinion to the Attorney General  Save Our Everglades, 636 So.2d 1336, 1341 (Fla. 1994). Here we find that the voters could not have understood the language provided on the ballot summary to imply the complicated method of measurement the state proposes, nor is it likely that they would have understood it to mean that a net containing less than 500 square feet of raw stock could measure almost twice that amount within the context of the amendment. Voters reading the summary or the entire amendment would most likely understand that a trawl constructed from 500 square feet or less of net mesh would be permitted under the amendment.
FCA contends that the amendment is unambiguous, and that the fourth sentence in subsection (c)(2) trumps previous conflicting provisions because the last expression of the legislative will is the law that prevails. See Johnson v. State, 157 Fla. 685, 697, 27 So.2d 276, 282 (1946), cert. denied, 329 U.S. 799, 67 S.Ct. 491, 91 L.Ed. 683 (1947). This rule of statutory construction is subservient, however, to the overarching rule that where a paragraph contains inconsistent sentences the paragraph should be read so as to be consistent with the apparent policy sought to be implemented. The obvious policy and intent of the amendment is to limit nearshore and inshore net fishing while permitting trawl nets containing up to 500 square feet of netting.
FCA further maintains that specific language requiring "maximum length" governs over language requiring measurements to be "with the meshes open." We reject this interpretation and find that the voters passed the amendment as an entity, thus an attempt to exclude any portion from consideration distorts voter intent. Proposed methods of measurement by the state and FCA reach an absurd result and defy common sense. "An interpretation of a constitutional provision which would lead to an absurd result will not be adopted" when a contra interpretation is more in keeping with the obvious intent and purpose sought to be *887 accomplished. Plante, 372 So.2d at 936. Neither the state nor FCA has demonstrated that the trial court's construction of the amendment is unreasonable, produces an absurd result, or is obviously contrary to voter intent.
Next, the state argues that the trial court erred by relying upon the amount of mesh stock used to construct the net and evidence that the nets proposed by the state and FCA are not commercially viable. The state claims that this evidence is irrelevant and prejudicial. We disagree. "If the purpose of construction is the ascertainment of meaning, nothing that is logically relevant should be excluded." Felix Frankfurter, Some Reflections on the Reading of Statutes, 47 Col.L.Rev. 527, 541 (1947). The amount of net mesh actually contained in the net is directly relevant to the 500 square foot limitation expressed in section (b)(2). We agree with the trial court that in the context of the amendment's stated purpose, which is to limit rather than prohibit shrimp trawl fishing, evidence of the nets' commercial viability is relevant. The record contains competent, substantial evidence that shrimp trawling would be rendered commercially infeasible in the nearshore and inshore waters if either the state's method or FCA's method of measuring slant height is adopted. We hold that both the evidence of the amount of raw stock used to construct the Golden-Crum net and the evidence of commercial viability are relevant and were properly considered by the court.
Accordingly, we affirm the judgment of the circuit court and hold that for purposes of measuring trawl nets under article X, section 16, slant height equals one half the stretched mesh length from the mid-point of the net mouth to the tail end of the net, and that the Golden-Crum net complies with the amendment's specifications.
It is so ordered.
GRIMES, C.J., and OVERTON, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] A shrimp trawl is a conical shaped, bag type net that is dragged along the ocean bottom with the shrimp being funneled through the open mouth of the net and captured in the closed end or bag of the net.
[2] The Florida Department of Environmental Protection, the Florida Marine Patrol, and the Florida Marine Fisheries Commission are the state regulatory agencies named as defendant parties. The Florida Conservation Association ("FCA") intervened on the defendants' behalf.
[3] The parties agree that the appropriate formula is C (circumference) x SH (slant height) ÷ 2 and that the circumference equals 65.75 feet.
[4] FCA's method: The stretched mesh measurement is always twice the bar measurement. The bar length is one side of one square mesh, and on the Golden-Crum net it is .75 inches; thus the stretched mesh measurement equals 1.5 inches. All parties agree that the length of the net measured by the tape in the stretched mesh position is 29 feet. FCA's calculation uses 29 feet as the slant height. According to FCA, the area of the Golden-Crum net is (65.75 x 29) ÷ 2 = 953.3 square feet.
[5] State's method: The state's conversion factor equals the ratio of the length of the diagonal of one mesh square (1.06) to the length of a stretched mesh (1.5). The state calculates the length of the diagonal using the Pythagorean Theorem: a[2] + b[2] = c[2]. The length of one side of one square of mesh equals .75, thus .75[2] + .75[2] = .5625 + .5625 = 1.125, and &check; 1.125 = 1.06. The conversion factor, (1.06 ÷ 1.5 = .706), is multiplied by the stretched mesh length (29 feet) to derive the state's slant height: .706 x 29 = 20.49. By the state's measure, the area of the Golden Crum net is (65.75 x 20.49) ÷ 2 = 673.6 square feet.
[6] Millender's method: Millender's conversion factor is exactly one half of the stretched mesh length. Because it is undisputed that the stretched mesh length of the net is 29 feet, using Millender's conversion factor (1/2), the slant height is one half of 29 feet, to wit: 14.5 feet. According to Millender, the area of the Golden Crum net is (65.75 x 14.5) ÷ 2 = 476.6 square feet.
[7] "`Bar measurement' means the mesh size of a net as measured by the distance from the center of a knot to the center of an adjacent knot." Fla. Admin. Code R. 46-31.006(2).