736 So.2d 17 (1999)
FLORIDA MARINE FISHERIES COMMISSION (DIVISION OF LAW ENFORCEMENT) and The State of Florida Department of Environmental Protection, Appellants,
v.
Raymond S. PRINGLE, Jr. and Ronald Fred Crum, Appellees.
No. 98-1500.
District Court of Appeal of Florida, First District.
April 6, 1999.
Rehearing Denied May 17, 1999.
*19 Robert A. Butterworth, Attorney General; Jonathan A. Glogau, Assistant Attorney General, Tallahassee, for Appellant Marine Fisheries Commission.
John W. Costigan, Deputy General Counsel, Andrew J. Baumann and M.B. Adelson, Assistant General Counsel, for Appellant Department of Environmental Protection.
Ronald A. Mowrey and L. William Porter III of Mowrey & Minacci, P.A., Tallahassee, for Appellees.
BENTON, J.
The Marine Fisheries Commission (MFC) and the Department of Environmental Protection (DEP) appeal the judgment of a circuit court which declares that "further restrictions, administrative or legislative, on the use of ... [certain fishing] nets would be in violation of the Florida Constitution, Article X, section 16(b)." We reverse.
We hold that the circuit court erred in reaching the merits of the claims Raymond S. Pringle, Jr. and Ronald Fred Crum brought in circuit court without having exhausted their administrative remedies. The trial court entered declaratory judgment, and enjoined certain net measurement methods, despite the pendency of rule challenge proceedings raising the same issues. Under section 120.56(1) and (2), Florida Statutes (Supp.1996), Messrs. Pringle and Crum initiated a challenge to MFC's proposed rule almost a year before they filed in circuit court on December 4, 1997. The evidentiary hearing on the rule challenge had already taken place on November 6 and 7, 1997.
After Messrs. Pringle and Crum filed their verified complaint for declaratory judgment and preliminary and permanent injunction in circuit court, the administrative law judge entered a final order in the rule challenge proceeding declining to find the changes proposed to Florida Administrative Code Rule 46-4.0081 an invalid exercise of delegated legislative authority. See generally Pringle v. Marine Fisheries Comm'n, 20 F.A.L.R.2061 (Fla. D.O.A.H. Feb. 20, 1998), affirmed, Case No. 98-979, 732 So.2d 395 (Fla. 1st DCA 1999). In contrast, the court below concluded:
Requiring 2 [inch] mesh size throughout the entire net would improperly expand the nets prohibited under the Amendment to include seine nets that have been used since the Amendment's implementation.... A rule which enlarges, modifies, or contravenes a statute constitutes an invalid exercise of delegated legislative authority.

(Emphasis added.) Both in the present proceeding and in the rule challenge proceeding, Messrs. Pringle and Crum "put on evidence ... [about] a net with only fifteen square feet of two-inch mesh and 485 square feet of three-inch mesh (the Pringle-Crum net)." Pringle v. Marine Fisheries Comm'n, Case No. 98-979, 732 So.2d 395 (Fla. 1st DCA 1999). Litigating in two separate forums, Messrs. Pringle *20 and Crum took "two bites at the apple." The diametrically opposed results they obtained have engendered confusion and occasioned expense while, it is now clear, gaining the litigants nothing. The trial court should have granted MFC's motion to dismiss for failure to exhaust administrative remedies. It erred in exercising jurisdiction over matters then under consideration in an administrative forum. See State, Dep't of Transp. v. Hendry Corp., 500 So.2d 218 (Fla. 1st DCA 1986).
It is improper, if administrative remedies are adequate, "to seek relief in the circuit court before those remedies are exhausted." Communities Fin. Corp. v. Department of Envtl. Regulation, 416 So.2d 813, 816 (Fla. 1st DCA 1982); see School Bd. of Flagler County v. Hauser, 293 So.2d 681 (Fla.1974); Bankers Ins. Co. v. Florida Residential Property & Cas. Joint Underwriting Ass'n, 689 So.2d 1127 (Fla. 1st DCA 1997); State, Dep't of Revenue v. Brock, 576 So.2d 848 (Fla. 1st DCA 1991); Friends of the Everglades v. State, Dep't of Envtl. Regulation, 387 So.2d 511 (Fla. 1st DCA 1980); School Bd. of Leon County v. Mitchell, 346 So.2d 562 (Fla. 1st DCA 1977). For one thing, once the administrative process runs its course, the supposed need for judicial intervention may disappear, and judicial resources may be conserved.
We held in Criterion Insurance Co. v. State, Department of Insurance, 458 So.2d 22 (Fla. 1st DCA 1984), that a party is entitled to injunctive relief[1] from administrative action only upon a showing of irreparable harm and a lack of administrative remedies:
[T]he party applying for same must make a showing of the likelihood of irreparable harm; such a showing depends upon the unavailability of an adequate remedy at law, or ... the absence of an adequate administrative remedy to cure allegedly egregious agency error.
Id. at 27. The doctrine of exhaustion of administrative remedies precludes judicial intervention in executive branch decision-making where administrative procedures can afford the relief a litigant seeks. See Key Haven Associated Enters. v. Board of Trustees of the Internal Improvement Trust Fund, 427 So.2d 153, 157 (Fla.1982) (limiting litigants wishing to contest the validity of agency action to administrative remedies and direct appeal), superseded on other grounds as noted in Bowen v. Florida Dep't of Envtl. Regulation, 448 So.2d 566, 568-69 (Fla. 2d DCA 1984), approved and adopted, 472 So.2d 460 (Fla. 1985); State ex rel. Dep't of Gen. Servs. v. Willis, 344 So.2d 580, 589 (Fla. 1st DCA 1977); see also Art. V, §§ 5(b) and 20(c)(3), Fla. Const.
"In November 1994, article X, section 16, known as the `net ban' amendment, was adopted through an initiative petition." Lane v. Chiles, 698 So.2d 260, 262 (Fla.1997). Contemplating "establishment by law or pursuant to law of more restrictions on the use of nets," Art. X, § 16(f), Fla. Const. (adopted 1994), the net ban amendment requires at a minimum:

*21 (b) For purposes of catching or taking any saltwater finfish, shellfish or other marine animals in Florida waters:
(1) No gill nets or other entangling nets shall be used in any Florida waters; and
(2) In addition to the prohibition set forth in (1), no other type of net containing more than 500 square feet of mesh area shall be used in nearshore and inshore Florida waters. Additionally, no more than two such nets, which shall not be connected, shall be used from any vessel, and no person not on vessel shall use more than one such net in nearshore and inshore Florida waters.
Art. X, § 16(b), Fla. Const. The MFC is charged with implementing not only statutory provisions, but also the constitutional provisions set out in the net ban amendment. This circumstance does not, however, justify expansion of the very limited role assigned the judiciary in the administrative rule adoption process.[2]
At the time the Florida Supreme Court decided Department of Environmental Protection v. Millender, 666 So.2d 882 (Fla.1996), the MFC had no authority to promulgate rules implementing the net ban amendment. Although the MFC had certain specified authority to promulgate rules implementing other provisions of chapter 370, the Legislature had delegated no authority with particular regard to the restrictions and prohibitions set out in the net ban amendment, at the time Millender was decided.
After the Millender decision, the Legislature granted the MFC authority to promulgate rules implementing the restrictions and prohibitions of the net ban amendment. See Chs. 97-160, § 39, at 3042 & 97-164, § 21, at 3093, Laws of Fla. (codified at § 370.093, Fla. Stat. (1997)); see also Ch. 98-203, § 6, at 1924-25, Laws of Fla. Now that the MFC has such authority, including the power to set gear specifications and prohibitions, see § 370.027(2), Fla. Stat. (1997), courts must respect the Legislature's allocation of primary jurisdiction[3] over these matters to *22 the MFC and refrain from unwarranted intrusions into the administrative process. See Key Haven Associated Enters., 427 So.2d at 157; Butler v. State, Dep't of Ins., 680 So.2d 1103, 1106 (Fla. 1st DCA 1996). Once the Legislature granted the MFC authority to promulgate rules implementing the amendment and the MFC began rulemaking, adequate administrative remedies remedies Messrs. Pringle and Crum had actually pursuedwere available.
The Legislature granted the MFC, not a phalanx of courts, authority to promulgate rules implementing the amendment's restrictions and prohibitions. See Chs. 97-160, § 39, at 3042 & 97-164, § 21, at 3093, Laws of Fla. (codified at § 370.093, Fla. Stat. (1997)); see also Ch. 98-203, § 6, at 1924-25, Laws of Fla. The MFC also has (broad and) exclusive statutory authority to set gear specifications and prohibitions. See § 370.027(2), Fla. Stat. (1997). Premature judicial intervention creates the possibility of contradictory court rulings, which might not be harmonized until (or unless) litigants reached the Supreme Court of Florida. Florida has thirty-five coastal counties lying within eighteen circuits, which lie in turn within all five appellate districts. The statutory scheme is apparently intended to avoid the possibility of numerous, possibly contradictory court decisions on questions the MFC has special expertise to address.
The amended verified complaint for declaratory judgment and preliminary and permanent injunction seeks to avoid the effect of Florida Administrative Code Rule 46-4.0081, as amended. Unlike facial constitutional challenges to statutes,[4] judicial challenges to administrative rules *23 must await exhaustion of available administrative remedies. See Key Haven Associated Enterprises, 427 So.2d at 157-58, where we said:
When the facial unconstitutionality of an agency rule is the focus of an aggrieved party's constitutional claim, the administrative proceedings must be exhausted and the claim presented to the district court. A circuit court should not, as a matter of policy, entertain an action alleging the facial unconstitutionality of an agency rule because an adequate remedy remains available in the administrative process.
See also Butler, 680 So.2d at 1106; Lee County v. New Testament Baptist Church, 507 So.2d 626, 628 (Fla. 2d DCA 1987). If agency action has not afforded relief on other grounds, litigants contending that existing agency rules are unconstitutional may present these questions to the district court of appeal, as, indeed, has occurred in the present controversy. See Pringle v. Marine Fisheries Comm'n, Case No. 98-979, 732 So.2d 395 (Fla. 1st DCA Mar.31, 1999).
Only if an agency proposes to act without any colorable legal authority, either because the statute it would implement is unconstitutional (however construed), or because the statute plainly has no application (however construed), and then only if irreparable injury is threatened, is a circuit court authorized to enjoin administrative action. See St. Joe Paper Co. v. Florida Dep't of Natural Resources, 536 So.2d 1119, 1124-25 (Fla. 1st DCA 1988). In the present case, nobody has suggested that sections 370.027(2) or 370.093, Florida Statutes (1997), do not apply or that they suffer any constitutional infirmity.
The amended verified complaint for declaratory judgment and preliminary and permanent injunction alleged that "a seine net that does not exceed 500 square feet, with any size seine panel, is a legal net as long as the seine panel contains meshes no larger than two inches stretched mesh." The trial court's judgment endorsing this view, if allowed to take effect,[5] would nullify the recent amendment of one of the MFC rules.[6] The amendment to Florida Administrative Code Rule 46-4.0081 bans seine nets which incorporate mesh sizes larger that two inches stretched mesh in any portion of the net: "Beginning January 1, 1998, no person shall fish with, set, or place in the water any seine net with a mesh size larger than 2 inches stretched mesh." Fla. Admin. Code. R. 46-4.0081(2)(d). As amended, the rule effectively outlaws the Pringle-Crum net because (over all but three percent of the net's area) it exceeds "two inches stretched mesh."
The circuit court's failure to grant MFC's motion to dismiss was error. See Gulf Pines Mem'l Park v. Oaklawn Mem'l Park, 361 So.2d 695, 699 (Fla.1978) ("[A]s a general proposition, the circuit court should refrain from entertaining declaratory suits except in the most extraordinary cases, where the party seeking to bypass usual administrative channels can demonstrate that no adequate remedy remains *24 available under Chapter 120."); State, Dep't of Envtl. Protection v. P Z Constr. Co., 633 So.2d 76, 78 (Fla. 3d DCA 1994); Communities Fin. Corp., 416 So.2d at 816. "[C]ircuit court intervention is never justified unless agency action is unmistakably and irretrievably in excess of delegated powers." Bankers Ins. Co., 689 So.2d at 1129.
Reversed.
MINER and VAN NORTWICK, JJ., CONCUR.
NOTES
[1] Among other things, Messrs. Pringle and Crum sought to enjoin the Marine Patrol's use of a particular method of measuring seine nets. The net ban amendment limits nets used in Florida waters to five hundred square feet in area. See Art. X, § 16(b)(2), Fla. Const. Both the net ban amendment itself, see Art. X, § 16(c)(2), Fla. Const. ("`[M]esh area' of a net means the total area of netting with the meshes open to comprise the maximum square footage.... Seines and other rectangular nets shall be calculated using the maximum length and maximum width of the netting."), and our supreme court have given guidance on how the measurement should take place. See Department of Envtl. Protection v. Millender, 666 So.2d 882 (Fla.1996). After the Marine Patrol began encountering nets constructed in a manner thatin their viewevaded proper measurement, the Department of Environmental Protection circulated a memorandum setting forth a method for determining the maximum length and maximum width of seine nets. We express no opinion on the merits of this methodology.
[2] Messrs. Pringle and Crum do not challenge the constitutional validity of the statutes that govern here or of the net ban amendment itself.

In Key Haven, the Supreme Court identified three types of constitutional challenges that may arise in the context of administrative decisionmaking: (1) the facial validity of a statute authorizing agency action; (2) the facial validity of an agency rule; and (3) the agency's action in implementing a concededly constitutional statute or rule. Key Haven [Associated Enters. v. Board of Trustees of the Internal Improvement Trust Fund, 427 So.2d 153 (Fla.1982)]. Concluding that a circuit court in a declaratory judgment action could entertain only the first of these three, the Key Haven court held that exhaustion was necessary in the other two situations, in order to assure that the agency "has a full opportunity to reach a sensitive, mature, and considered decision upon a complete record appropriate to the issues." Id. at 158.
R.L. Caleen Jr., et al., Exhaustion of Administrative Remedies in Florida, Fla. Bar J., June 1989, at 73, 74 (footnotes incorporated in text). See Chrysler Corp. v. Florida Dep't of Highway Safety and Motor Vehicles, 720 So.2d 563, 568 (Fla. 1st DCA 1998) ("Insofar as Chrysler's facial constitutional challenge is concerned, we conclude that the trial court is the proper forum under Key Haven for resolution of this question."). See also Seann M. Frazier, et al., Choice of Forum in Florida's Administrative and Circuit Court, Fla. Bar. J., July/Aug.1997, at 62.
[3] The doctrine of primary jurisdiction requires that courts abstain from deciding claims otherwise originally cognizable where doing so requires decision of questions the Legislature has placed within the special competence of an administrative body. Like the exhaustion requirement, the doctrine of primary jurisdiction counsels judicial abstention. The latter determines whothe court or the agencyshould make the initial decision while the former governs the time of judicial review of administrative action.

The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 433, 60 S.Ct. 325 [1940].
United States v. Western Pac. R.R., 352 U.S. 59, 63-64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). The courts fashioned these doctrines of judicial self-limitation to delineate "the boundary lines between spheres of administrative and judicial action." 2 Frank G. Cooper, State Administrative Law 573 (1965). See generally R.L. Caleen Jr., et al., Exhaustion of Administrative Remedies in Florida, Fla. Bar J., June 1989, at 73.
[4] In Communities Financial Corporation v. Department of Environmental Regulation, 416 So.2d 813 (Fla. 1st DCA 1982), the court listed specific allegations necessary to invoke a circuit court's jurisdiction without first exhausting administrative remedies:

(1) [T]he complaint must demonstrate some compelling reason why the APA ... does not avail the complainants in their grievance against the agency; or (2) the complaint must allege a lack of general authority in the agency and, if it is shown, that the APA has no remedy for it; or (3) illegal conduct by the agency must be shown, and, if that is the case, that the APA cannot remedy that illegality, or (4) agency ignorance of the law, the facts, or public good must be shown and, if any of that is the case, that the Act provides no remedy; or (5) a claim must be made that the agency ignores or refuses to recognize related or substantial interests and refuses to afford a hearing or otherwise refuses to recognize that the complainants' grievance is cognizable administratively.
Id. at 816 (emphasis supplied). The "mere assertion of constitutional questions should not automatically entitle a party to bypass administrative channels." Gulf Pines Mem'l Park v. Oaklawn Mem'l Park, 361 So.2d 695, 699 (Fla.1978).
Since the administrative process cannot resolve a constitutional attack upon a statute, as noted in Carrollwood State Bank v. Lewis, 362 So.2d 110, 113-114 (Fla. 1st DCA 1978), and Department of Revenue v. Young American Builders, 330 So.2d 864 (Fla. 1st DCA 1976), the circuit court may entertain a declaratory action as to the statute's validity when the facial constitutionality of a statute being implemented by an agency is challenged. See Gulf Pines Mem'l Park, 361 So.2d at 699 (requiring applicants to endure the time and expense of full administrative proceedings which can have no effect on the dispositive constitutional issue is pointless).
[5] By appealing the judgment under review, the MFC obtained an automatic stay under Florida Rule of Appellate Procedure 9.310(b)(2). The trial court then entered an order dissolving the automatic stay. But the MFC successfully appealed the trial court's order dissolving the stay. See State, Dep't of Envtl. Protection v. Pringle, 707 So.2d 387 (Fla. 1st DCA 1998) (reinstating automatic stay).
[6] The proposed changes to Florida Administrative Code Rule 46-4.0081 took effect on April 27, 1998. The Governor and Cabinet, sitting as the Board of Trustees of the Internal Improvement Trust Fund, approved the amendment for adoption, in keeping with section 370.027(3)(a), Florida Statutes (1997), after the proposed rule challenge failed before the administrative law judge. We recently affirmed the administrative law judge's order concluding that the rule amendment did not constitute an invalid exercise of delegated legislative authority. See Pringle v. Marine Fisheries Comm'n, Case No. 98-979, 732 So.2d 395 (Fla. 1st DCA 1999).