FLORIDA FISH AND WILDLIFE
CONSERVATION COMMISSION,

      Appellant,

v.

WAKULLA FISHERMEN'S
ASSOCIATION, INC., RONALD
FRED CRUM, JONAS PORTER, and
KEITH WARD,

      Appellees.

_____/

IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D13-5115

**CORRECTED PAGES: pg 1
CORRECTION IS UNDERLINED IN RED
MAILED: July 8, 2014
BY: THA**

Opinion filed July 7, 2014.

An appeal from the Circuit Court for Leon County.
Jackie L. Fulford, Judge.

Pamela Jo Bondi, Attorney General and Jonathan A. Glogau, Assistant Attorney General, Tallahassee, for Appellant.

Carri S. Leininger of Williams, Leininger & Cosby, P.A., North Palm Beach, and Fred McCormack of Fred McCormack, LLC, Tallahassee, for Amicus Curiae Coastal Conservation Association-Florida.

Robert N. Hartsell and Sarah Hayter of Robert N. Hartsell, P.A., Pompano Beach, for Amicus Curiae The Snook and Gamefish Foundation.

David Guest and Bradley Marshall of Earthjustice, Tallahassee for Amicus Curiae Florida Wildlife Federation.

Ronald A. Mowrey, Mark L. Mason, and Nicholas Fugate of the Mowrey Law Firm, P.A., Tallahassee, for Appellees.

Gary M. Mastry, II of the Mastry Law, P.A., St. Petersburg, for Amici Curiae The Monroe County Commercial Fishermen and The Southeastern Fisheries Association.

PER CURIAM.

The Florida Fish and Wildlife Conservation Commission appeals a final judgment, contending the trial court erred by enjoining enforcement of article X, section 16, of the Florida Constitution and Florida Administrative Code Rules 68B-4.002, 68B-4.0081, and 68B-39.0047, and enjoining the Commission's authority to adopt rules pursuant to article IV, section 9, of the Florida Constitution with respect to the use of a "gill net" or an "entangling net." We agree and reverse.

Article X, section 16, which became effective on July 1, 1995, was enacted to place "limitations on marine net fishing in Florida waters to protect saltwater finfish, shellfish, and other marine animals from unnecessary killing, overfishing and waste." Art. X, § 16(a), Fla. Const. The provisions prohibit the use of "gill nets or other entangling nets" and limit all other nets in the nearshore and inshore waters of Florida to 500 square feet of mesh area. Art. X, § 16(b), Fla. Const.

The provisions of article X, section 16, and the rules adopted to implement the provisions, have been the subject of almost continuous litigation since the proposal of the constitutional amendment. See Advisory Op. to the Attorney Gen. – Ltd. Marine Net Fishing, 620 So. 2d 997, 999 (Fla. 1993) (holding the proposed amendment met the single-subject and ballot summary requirements); Dep't of Envtl. Prot. v. Millender, 666 So. 2d 882 (Fla. 1996) (addressing the method of measuring trawl nets pursuant to article X, section 16); Lane v. Chiles, 698 So. 2d 260, 263 (Fla. 1997) (holding article X, section 16, bore a reasonable relationship to a permissible governmental objective and was not discriminatory, arbitrary, or oppressive); State v. Conner, 717 So. 2d 179 (Fla. 1st DCA 1998) (rejecting the assertion that article X, section 16, and a Marine Fisheries Commission rule, both of which prohibited the use of nets greater than 500 square feet in nearshore and inshore Florida waters, were unconstitutionally vague); State v. Kirvin, 718 So. 2d 893, 894 (Fla. 1st DCA 1998) (holding the provisions prohibiting use of gill nets or other entangling nets were not "unconstitutionally vague"); Pringle v. Marine Fisheries Comm'n, 732 So. 2d 395, 396-97 (Fla. 1st DCA 1999) (noting the "appellants' evidence that a 500-square-foot net with a uniform mesh of two inches would not be commercially viable for catching mullet," stating that a "net disallowed by the Net Ban Amendment cannot lawfully be used, whatever its commercial viability," and affirming the administrative law judge's conclusion that

3

the proposed rule amendment to prohibit any mesh size larger than two inches stretched mesh constituted a valid exercise of delegated legislative authority). See also Fla. Fish & Wildlife Conservation Comm'n v. Pringle, 838 So. 2d 648, 650 (Fla. 1st DCA 2003) (reversing, based on failure to exhaust administrative remedies, a circuit court judgment that (i) declared a net constructed of three-inch stretched mesh did not violate article X, section 16(b), and (ii) ruled that Florida Administrative Code Rules 68B-4.0081 and 68B-39.0047 were unconstitutional); Fla. Marine Fisheries Comm'n (Div. of Law Enforcement) v. Pringle, 736 So. 2d 17, 19 (Fla. 1st DCA 1999) (reversing, based on failure to exhaust administrative remedies, a circuit court judgment that declared restrictions on the use of a 500 square foot seine net constructed with three-inch stretched mesh violated article X, section 16(b)).

In the present action, Rules 68B-4.002 (defining an "entangling net" and a "gill net"), 68B-4.0081 (prohibiting the use of any gill or entangling nets of any size and prohibiting the use of any net, other than a cast net, landing or dip net, jellyfish paired trawl, or calico scallop otter trawl with a mesh size greater than two inches stretched mesh), and 68B-39.0047 (prohibiting the harvesting of mullet with the use of any gear or method other than permitted by rule), are again challenged. Appellees alleged below that the rules are facially unconstitutional and unconstitutional as applied to commercial mullet fishermen.

4

The trial court recognized that these rules, and the underlying constitutional provision, have been previously challenged and upheld, and that the prior decisions reviewed "similar matters."  Although the trial court acknowledged that "[i]t would be much easier to simply deny [Appellees] any relief and say 'you have previously had your day in court,'" the trial court rejected the Commission's contention that res judicata barred relitigation of the issues raised.  The trial court instead determined that application of the constitutional provision and rules to mullet fisherman was "fundamentally unfair" and that it was compelled as a "court of equity . . . to at least attempt to abate the unfairness."

Res judicata, which is Latin for "a matter adjudicated," is the doctrine that "'[a] judgment on the merits rendered in a *former* suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action.'"  Fla. Dep't of Transp. v. Juliano, 801 So. 2d 101, 105 (Fla. 2001) (quoting Kimbrell v. Paige, 448 So. 2d 1009, 1012 (Fla. 1984) (emphasis supplied)); Black's Law Dictionary 1305 (7th ed. 1999). See also State v. McBride, 848 So. 2d 287, 290 (Fla. 2003).  "The doctrine of res judicata applies when four identities are present: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action;

5

and (4) identity of the quality of the persons for or against whom the claim is made." Topps v. State, 865 So. 2d 1253, 1255 (Fla. 2004).

The trial court's ruling, however well-intentioned it might have been, was erroneous. The doctrine of res judicata applies to courts of law and courts of equity, and a judge is bound by the prior precedents of the jurisdiction in which the judge serves, regardless of whether the judge agrees with those prior decisions. See Phoenix Holding, LLC v. Martinez, 27 So. 3d 791, 793 (Fla. 3d DCA 2010) ("With no valid reason, the trial judge set aside the judgment and sale solely because he did not 'think it [was] fair.' Unfortunately, neither the ground of fairness nor 'the "ground" of benevolence and compassion . . . constitute[s] a lawful, cognizable basis for granting relief to one side to the detriment of the other, and thus cannot support the order below: no judicial action of any kind can rest on such a foundation.' Republic Fed. Bank, N.A. v. Doyle, 19 So. 3d 1053, 1054 (Fla. 3d DCA 2009)." Cf. Orr v. Trask, 464 So. 2d 131, 135 (Fla. 1985) (reversing an order that enjoined the Secretary of the Florida Department of Labor and Employment Security on equitable grounds from appointing a successor to the deputy commissioner who resigned because the "authority of a governor to appoint deputy commissioners is embodied in law" and "[c]ourts of equity have no power to overrule established law"); Canakaris v. Canakaris, 382 So. 2d 1197, 1203 (Fla. 1980) (explaining that, when exercising discretion, the judge "is not a knight-errant

6

roaming at will in pursuit of his own ideal of beauty or of goodness" (quoting B. Cardozo, The Nature of the Judicial Process 141 (1921)); Flagler v. Flagler, 94 So. 2d 592, 594 (Fla. 1957) ("[W]e cannot agree that courts of equity have any right or power under the law of Florida to issue such order it considers to be in the best interest of 'social justice' at the particular moment without regard to established law.  This court has no authority to change the law simply because the law seems to us to be inadequate in some particular case."); Schwartz v. Zaconick, 68 So. 2d 173, 175-76 (Fla. 1953) (noting, in holding the court of equity could not ignore the parol evidence rule, that "[e]quity, although not as inflexible as the law, is nevertheless administered within established limits and upon recognized principles" and "must follow the law unless some recognized principle permits otherwise"); Hayes v. Frohock, 47 So. 343, 343 (Fla. 1908) (affirming circuit court's dissolution of an injunction that had enjoined the sale of real estate under an execution because it appeared the "legality of the execution was determined under the statutory proceedings, . . . no writ of error was taken to the judgment of the court dismissing the proceedings," and the matter was "res adjudicata by the proceeding at law taken by the defendant in execution, who cannot have such proceeding reviewed in equity").

The doctrine of res judicata barred relitigation of the validity of the rules at issue.  In Wakulla Commercial Fishermen's Association, Inc. v. Florida Fish &

7

Wildlife Conservation Commission, 951 So. 2d 8 (Fla. 1st DCA 2007), plaintiffs sought a declaration that the three rules were unconstitutional and unconstitutional as applied. It was alleged that "research indicate[d] that nets with two-inch meshes gill a significant number of non-usable juvenile fish, which could lead to eradication of the species, whereas nets with larger meshes gill fewer fish – and the ones which are gilled by the large meshes are older, commercially viable fish." Id. at 10. It was further alleged that "these three rules operate together to violate the Florida Constitution's ban on gill and entangling nets, which ban exists to 'protect saltwater finfish, shellfish, and other marine animals from unnecessary killing, overfishing and waste.'" Id. (citation omitted).

The trial judge in Wakulla Commercial Fishermen's Association found a rational basis supported the three challenged rules and granted the Commission's motion for summary judgment. This court affirmed:

> Because the challenged rules do not involve a suspect class or a fundamental right, they are reviewed under the rational basis test. Under the rational basis test, the validity of the rules must be upheld if "any state of facts may be conceived to justify [them]." Whether [the Commission] chose the best method to protect marine resources is not an appropriate judicial inquiry under the rational basis standard. . . .
> . . . .
> [The Commission] . . . presented expert testimony that the mullet population remains healthy and has actually *increased* since the implementation of the two-inch net mesh limitation. This testimony . . . is sufficient to establish a rational basis for [the Commission's] adoption of the challenged rules as a means of furthering the goal of protecting marine resources.

Id. at 9-10 (citations omitted; emphasis supplied). See also Crum v. Fla. Fish & Wildlife Conservation Comm'n, 888 So. 2d 22 (Fla. 1st DCA 2004) (table opinion affirming In re: Petition of Ronald Fred Crum & Keith Ward for Declaratory Statement, Nets, Order No. E003-05 June 1, 2003, in which the Commission (i) concluded that a proposed "hybrid" net with mesh size larger than two inches was not lawful and (ii) denied a request for an evidentiary hearing because each of the prior cases "involve[d] the same issues regarding application of the prohibitions of the Net Limitation Amendment to large mesh nets that the Commission has determined to be gill or entangling nets").

Appellees' assertion that application of the doctrine of res judicata "will inflict pernicious results" is not persuasive. The Florida Supreme Court "has long recognized that res judicata will not be invoked where it would defeat the ends of justice." McBride, 848 So. 2d at 291. The injustice asserted by Appellees, however, "stems from the arbitrary rule and its enforcement against commercial mullet fishermen trying to earn a living" based on the allegations that the "two-inch stretch mesh rule is far less selective than a net with a larger mesh" so that "commercial mullet fishermen are gilling vast quantities of juvenile fish every time they deploy a net" and are compelled to use a "net that violates the purpose of the Net Limitation Amendment."

9

Because these assertions have been raised and rejected in prior proceedings, Appellees failed to establish that a manifest injustice will result. See, e.g., Kalmanson v. Ducote, 955 So. 2d 50, 50-51 (Fla. 5th DCA 2007) (determining that when the respondent had appealed a sanction order on the basis that the trial court's imposition of monetary sanctions violated his right to due process, the appellate court had affirmed the sanction order, and the respondent's motions for rehearing, for rehearing en banc and for a written decision were denied, the doctrine of res judicata precluded the trial court from staying enforcement of the sanction order and ruling a hearing was necessary to determine whether the respondent was given adequate notice); Sibley v. Sibley, 885 So. 2d 980, 982 (Fla. 3d DCA 2004) ("The former husband argues that it would be a manifest injustice to enforce the March 4 order because the prior panel which affirmed the March 4 order did not write an opinion explaining the panel's reasoning. In the former husband's view, the prior panel was mistaken and should have written an opinion to explain the ruling. This is not a legally sufficient showing of manifest injustice."). Cf. Williams v. State, 47 So. 3d 906, 908 (Fla. 3d DCA 2010) (holding the manifest injustice exception to the res judicata doctrine was applicable when the defendant was sentenced under a version of the sentencing guidelines that was later held to be unconstitutional); Ranes v. State, 913 So. 2d 742, 743 (Fla. 4th DCA 2005) (determining the manifest injustice exception was applicable

10

when the defendant sufficiently alleged and established that he missed the deadline to file a rule 3.850 motion because his attorney had agreed to file the motion but failed to do so in a timely manner); State, Dep't of Revenue, Office of Child Support Enforcement on behalf of D.J.N. v. Redding, 685 So. 2d 1000 (Fla. 3d DCA 1997) (noting the manifest injustice exception would apply in a subsequent paternity action because there is a recognized public policy of the state that children be provided support, and application of res judicata would deprive a child of needed support for the remainder of the child's minority).

The requisite "four identities" and a decision on the merits, required for application of the doctrine of res judicata, were established by the Commission. The trial court failed to find (and Appellees failed to establish) a sufficient factual foundation for application of the manifest injustice exception. The trial court therefore erred in determining that Appellees' claims were not barred by res judicata.

The trial court also erred by enjoining enforcement of article X, section 16, and the Commission's authority pursuant to article IV, section 9, to adopt rules with respect to use of a gill net or an entangling net. This relief was not requested by Appellees below and is not advocated by Appellees on appeal. See, e.g., Worthington v. Worthington, 123 So. 3d 1189, 1190-91 (Fla. 2d DCA 2013) ("'In . . . civil matters, courts are not authorized to award relief not requested in the

pleadings. To grant unrequested relief is an abuse of discretion and reversible error.' Additionally, a court should not grant such relief absent proper notice to the parties." (citation omitted)); Antoniadis v. EARCA, N.V., 442 So. 2d 1001, 1001 (Fla. 3d DCA 1983) (holding the trial court lacked the authority to fashion a remedy that was not raised by any of the pleadings and not tried by consent).

REVERSED.

THOMAS, WETHERELL, and MARSTILLER, JJ., CONCUR.